814 So.2d 1077 (2002)
SPRING LAKE IMPROVEMENT DISTRICT, Appellant,
v.
Sandra TYRRELL, Larry Ross, Boniface Deblasio, William D. Soman, and GTL Investments, L.P., on behalf of themselves and all others similarly situated, and Tax Collector of Highlands County, Florida, Appellees.
No. 2D01-408.
District Court of Appeal of Florida, Second District.
January 25, 2002.
Rehearing Denied May 3, 2002.
*1078 William J. Nielander, Lake Placid, and Donald E. Hemke of Carlton Fields, P.A., Tampa, for Appellant.
Robin Gibson and Kevin A. Ashley of Gibson Valenti & Ashley, Lake Wales, and John McClure of John K. McClure, P.A., Sebring, for Appellees.
Kenneth G. Spillias of Lewis Longman & Walker, P.A., West Palm Beach, for Amicus Curiae Florida Association of Special Districts, Inc.
CASANUEVA, Judge.
Spring Lake Improvement District, a special improvement taxing district, appeals from a final judgment requiring it to refund more than one million dollars it has collected in capital and maintenance tax assessments from certain property owners in the district for over fifteen years. It asserts that the trial court erred in compelling a refund of all capital and maintenance taxes these owners paid, or alternatively, those paid beyond the limitations period, and the award of more than one million dollars in prejudgment interest. We agree in part and reverse in part.
The history between Spring Lake and these landowners has been long and tortuous. In the beginning, a special act of the legislature, chapter 71-669, Laws of Florida, created Spring Lake to operate as a special improvement district pursuant to chapter 287, Florida Statutes. To finance its development plan involving more than three thousand acres within its jurisdiction, *1079 Spring Lake offered bonds for sale. The circuit court validated these bonds in May 1973. Beginning in 1974, Spring Lake collected annually both a "capital tax," used to satisfy the bond obligation, and a "maintenance tax," used to build and maintain, at first, certain drainage improvements, and later, other community improvements within the district.
Due to increasingly restrictive environmental regulations, it became obvious in the latter part of the 1970s that the improvements could not be completed as originally planned. As a result, approximately five hundred acres, in three separate areas, would not be developed. Nonetheless, Spring Lake sold this acreage in 1985 to Deane Stump's company, Central Southern Properties, with the written understanding that even though these acres would not be improved the land would remain subject to both taxes. In 1986, Mr. Stump auctioned the subject parcels "as is" to Sandra Tyrrell and the other members of the appellee/plaintiff class or their predecessors ("the affected landowners").
Beginning in 1986, Ms. Tyrrell complained to Spring Lake that she was paying the maintenance tax on her thirty-eight acres for services she was not receiving. She complained again in 1987.[1] Larry Ross joined in this complaint. At that time, Spring Lake's attorney responded that, based on an Auditor General's opinion, it believed that it could not readjust the maintenance tax for their properties. Mr. Ross's attorney concurred in that analysis but warned that a suit might be filed to clarify Spring Lake's power regarding the maintenance tax. Ms. Tyrrell again complained in 1991 but took no further action.
L.E. Selph, who had purchased approximately 230 acres, reached a consent agreement with Spring Lake under which Spring Lake conveyed certain drainage and maintenance areas and, in return, received a release from any liability to provide future drainage facilities and maintenance. The agreement did not release Mr. Selph from paying any district taxes and assessments. It did, however, contain language binding successor owners. Thereafter, Mr. Selph paid taxes on the property.
Landowner Childers contacted Spring Lake in 1987 to acquire additional land around his affected 350 acres. Spring Lake sold him the requested areas and also agreed that he could vacate the plat that was attached to his acres. Furthermore, Spring Lake exempted his lands from the mosquito control, lighting, and recreation taxes, as it had done for the other affected owners who were not receiving those services. Mr. Childers recorded the vacation of the plat and continued to pay the maintenance and capital taxes.
On January 23, 1998, the affected landowners who were not receiving the services for which the taxes were assessed commenced the instant suit. They brought it as a class action and sought rescission and restitution for the allegedly unlawful capital and maintenance tax assessments. The trial court denied Spring Lake's statute of limitations defense and granted partial summary judgment, determining that the taxes were void from the district's inception because Spring Lake had never provided any benefit to these affected landowners from these taxes. Following a nonjury trial on the remaining issues, the final judgment required Spring Lake to refund $1,492,199.36 in maintenance and capital taxes to the affected owners and to pay $1,213,435.61 in prejudgment interest.

*1080 Statute of Limitations and the Maintenance Taxes
We disagree with the trial court's conclusion that the maintenance taxes that Spring Lake had levied on owners who had never received any benefit from them since the inception of the district were void. There has never been any dispute that Spring Lake has the authority to levy such assessments; the legislature granted it this authority when it created the district. Spring Lake has assessed and collected maintenance taxes from the unaffected landowners since the beginning. Thus, because the affected landowners waited so long to seek relief, we conclude that the statute of limitations and the doctrine of laches bar them from recovering those taxes assessed for maintenance beyond the four-year period contained in section 95.11(3)(p), Florida Statutes (1997). Specifically, no maintenance tax paid prior to January 23, 1994, may be refunded. Manatee County v. Town of Longboat Key, 365 So.2d 143 (Fla.1978); Walden v. Univ. of Tampa, Inc., 304 So.2d 134 (Fla. 2d DCA 1974). We affirm that part of the judgment ordering refunds of taxes paid for periods since that date.

Capital Taxes
Of more concern is that aspect of the action that sought a refund of many years' worth of capital taxes paid. The funds derived from this tax were pledged to pay the interest on and eventually retire the bonds sold to the public as the initial financing tool. These bonds, approved by the circuit court in 1973 and having a life span of thirty years, require that interest be paid periodically to the bondholders as debt service, and will soon require full repayment of the principal. Certainly, the parties to this contract, i.e., the bondholders and Spring Lake, are entitled to rely upon a bond validation, judicially approved long ago, for payment of this indebtedness from the capital taxes assessed against all property in the district. Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 42 (1934); Metro. Dade County Water & Sewer Bd. v. City of North Miami, 213 So.2d 482 (Fla. 3d DCA 1968). The bond validation decree found that Spring Lake's resolution in April 1973, levying the capital tax on all land in the district, was duly and legally adopted and constituted a valid and binding levy. That unappealed 1973 judgment is res judicata of this issue. To hold otherwise would countenance an impairment of the contract between the bondholders and Spring Lake. See Fla. Beverage Corp. v. Div. of Alcoholic Beverages & Tobacco, 503 So.2d 396, 398-99 (Fla. 1st DCA 1987) (holding that at the time the parties entered into a brand distribution agreement, the statute interposed a provision into such contracts that anticipated that brands could not be withdrawn during term of an agreement absent good cause; to allow the statute's repeal to mean that the same contractual provision was removed from the contract would constitute a prohibited impairment of the obligations of the contract); New England Mut. Life Ins. Co. v. Luxury Home Builders, Inc., 311 So.2d 160, 163 (Fla. 3d DCA 1975) (stating that a "contract right, which by constitutional provision is immune to impairment by legislative action, should not be impaired or abrogated by a court"). Therefore, we vacate that part of the judgment that ordered refunds of all capital taxes paid by the affected landowners.

Prejudgment Interest
The case of Kuhnlein v. Department of Revenue, 662 So.2d 308 (Fla.1995), holds that there is no entitlement to prejudgment interest in an action to recover a tax refund. See also Dep't of Revenue v. Brock, 673 So.2d 902, 902 (Fla. 1st DCA 1996). Accordingly, we reverse that portion *1081 of the final judgment awarding prejudgment interest. As in Brock, we note that although there is no entitlement to an award of prejudgment interest, because there is now a final monetary judgment, postjudgment interest is available.
In summary, we affirm that part of the final judgment awarding a refund of the maintenance taxes paid for the four years prior to the filing date of this suit, but reverse the remainder of the judgment awarding refunds for maintenance taxes paid before that time, refunds of all capital taxes, and prejudgment interest.
BLUE, C.J., and WHATLEY, J., Concur.
NOTES
[1] Ms. Tyrrell's counsel at one point in these earlier dealings with Spring Lake conceded that the capital tax on her acres was not disputed.