971 So.2d 974 (2008)
Robert L. FREDRICK, Syd Katz and Joel Langer, Appellants,
v.
NORTHERN PALM BEACH COUNTY IMPROVEMENT DISTRICT, Palm Beach County, Florida and Ibis Landing Venture, Ltd., Appellees.
No. 4D06-3714.
District Court of Appeal of Florida, Fourth District.
January 2, 2008.
June Galkoski Hoffman of Fowler White Burnett, P.A., Miami, Steven Sloane Newburgh and Sandra I. Tart of Fowler White Burnett, P.A., West Palm Beach, for appellants.
Ronald E. Crescenzo and Brian B. Joslyn of Casey Ciklin Lubitz Martens & O'Connell, West Palm Beach, for appellee Northern Palm Beach County Improvement District.
Leonard Berger, Senior Assistant County Attorney, Palm Beach County Attorney's Office, West Palm Beach, for appellee Palm Beach County.
TRAWICK, DARYL E., Associate Judge.
Appellants Robert L Frederick, Syd Katz and Joel Langer (the "Homeowners"), brought action against Appellees North Palm Beach County Improvement District (the "District"), Palm Beach County (the "County") and Ibis Landing Ventures, Ltd. ("Ibis") challenging the validity of property assessments and impact fees which had accrued on their property for the purpose of expanding Northlake Boulevard. The District, the County and Ibis moved for partial summary judgment as to Counts I through V of the amended complaint, asserting that these counts were barred by the statute of limitations, laches, waiver and res judicata. Following a hearing, the trial court granted the motion *976 and entered partial summary judgment as to these counts in favor of the Appellees.
Background Facts
The District is a public corporation of the state of Florida that is authorized by law to create water management plans for land within its jurisdiction, to issue bonds to finance these plans, to delineate areas called units of development that benefit from the plans, and finally, to assess the lands located in the unit of development to redeem the bonds.[1] In 1989, the District created an area called "Unit of Development 18" and adopted a Water Management Plan to benefit the area. The Unit 18 site is also known as the Ibis Golf and Country Club. This development was to include single family residences, multi-family housing, park areas and three golf courses. The Water Management Plan was to include, among other aspects, improvements to Northlake Boulevard. In order to finance the Water Management Plan, in 1990, the District adopted a General Bond Resolution. This resolution authorized the District to issue bonds not exceeding $35,235,000 to finance the improvements under the Water Management Plan. At the same time, the District adopted the Unit of Development 18 Program One Tax Resolution, authorizing the assessment of "drainage taxes" on all property owners within Unit 18, in order to pay for the bonds that the District had issued.
In 1990, several property owners who would be subject to taxation in Unit 18, along with the State of Florida, brought a lawsuit against the District challenging the issuance of the bonds under the General Bond Resolution. On June 6, 1990, the Fifteenth Judicial Circuit Court entered a Final Judgment that validated the bonds authorized by the District in the General Bond Resolution.[2] The trial court in that case determined that (1) Unit 18 was created in accordance with Chapter 59-994, Laws of Florida and Chapter 298, Florida Statutes; (2) that the benefits assessed against the land in Unit 18 were greater than both the costs of the improvements required by the plan and the amount of bonds issued; (3) and that the drainage tax had been lawfully levied pursuant to Chapter 298. A Certificate of Non Appeal followed on July 17, 1990.
In December 1993, the District, County, PGA National Venture and Ibis National Venture (INV)[3] entered into a Joint Project Agreement (the "Agreement"). The Agreement called for the District to issue bonds to finance the construction of Northlake Boulevard improvements and accept bids for the construction of the improvements. The Agreement addressed the issue of how the bonds would be financed as follows:
WHEREAS, to the extent that the DISTRICT has or will issue tax exempt bonds to acquire the funds necessary to design, finance and/or construct certain Sections of the described Northlake *977 Boulevard improvements, the owners of the real property within the DISTRICT'S Unit No. 18 will be subject to annual DISTRICT non-ad valorem assessments in order to repay said bonded indebtedness . . .
Additionally, the Agreement discharged INV's debt to the District of $575,000 because the improvements INV was required to make exceeded the original estimated cost. Lastly, under the Agreement, all impact fees collected within the Ibis development would be paid to the District so that it would be able to redeem the bonds more quickly.
Three documents were recorded in the public archives which relate to the issuance of the bonds and the imposition of the property assessments and impact fees on the owners of properties within Unit 18. First, on January 9, 1990, the District recorded the Notice and Disclosure of Taxing Authority (the "Notice") in the Official Record Book 6318, Page 1394 of the Public Records of Palm Beach County. This Notice "inform[s] those individuals or entities owning or purchasing land within the area described [Unit 18] . . . that they will be responsible on an annual basis for payment of maintenance taxes and special assessments against their land." Second, on July 31, 1990, the Declaration of Covenants, Restrictions and Easements for Ibis Golf and Country Club (the "Declarations of Covenants") was recorded in the Official Record Book 6534, Page 1173 of the Public Records of Palm Beach County. In Article V, section 13, the Declaration of Covenants provides that:
Each owner hereby acknowledges and agrees that he shall be assessed taxes levied by the District for the payment of bonds to finance and maintain certain roadway systems . . . throughout and servicing the Property. Each owner further acknowledges and agrees that the District may issue additional bonds or other financing in the future for future roadway improvements on and servicing the Property including the expansion of Northlake Boulevard.
Third, the Agreement, dated December 7, 1993 was recorded in the public records of Palm Beach County. It stated that "owners of the real property within the DISTRICT'S Unit No. 18 will be subject to annual DISTRICT non-ad valorem assessments in order to repay said bonded indebtedness . . ."
The Homeowners bought properties inside Unit 18 in 1998, 1997 and 1996 respectively, and all testified in depositions that they were given a copy of the Declaration of Covenants. All three Homeowners were aware from the first year of purchase that taxes and assessments were levied against properties they bought.[4]
In October 2004, the Homeowners filed a six count complaint (five counts are the subject of this appeal) against the District, the County and Ibis, alleging that the assessments and impact fees imposed by the District in order to repay the bonds issued were improperly imposed, apportioned and applied. The Homeowners argue that the District illegally and inequitably assessed the homeowners of Unit 18 exclusively with the $40 million bond debt that resulted from expanding Northlake Boulevard. The Homeowners allege that other nearby housing developments benefited from the expansion and that the other developments should also be taxed.
The District filed a motion for partial summary final judgment, arguing that the *978 Homeowner's claims were barred by the statute of limitations, res judicata, and laches. As to the statute of limitations, the Homeowners maintained that while ten years had passed since the Agreement, the statute had not run since they had never been noticed that only Unit 18 owners were charged with the impact fees and property assessments used to build Northlake Boulevard. The Homeowners allege that it was not until 2003, during a meeting where the District discussed the assessments, that they became aware of this inequity. The trial court granted the motion and entered a partial summary judgment as to Counts I through V, finding that the action was not brought within the statute of limitations since:
The instant action was filed more than four years after (a) Defendants' entry into the Joint Project Agreement; (b) the date the bond validation order became final; (c) the recording of the Notice of Taxing Authority and the Ibis Declaration of Covenants, Restrictions and Easements in the public records; and (d) the date each of the named Plaintiffs each made their initial purchase property in the Ibis Development.
Additionally, the trial court found that "[a]s a matter of law, all of the named Plaintiffs purchased their properties in IBIS with at least inquiry notice as to the contents of the public records." The trial court concluded that the Homeowners had inquiry notice because they had all received a copy of the Declaration of Covenants. According to the court, they had "failed or neglected to review the applicable documents and records prior to their purchase in Ibis and did so at their own peril."
Analysis
Review of a trial court's conclusions of law and statutory construction is de novo. Dependable Component Supply, Inc. v. Pace Electronics, Inc., 772 So.2d 582, 584 (Fla. 4th DCA 2000). Appellate review of an entry of summary judgment is likewise de novo. Florida Bar v. Cosnow, 797 So.2d 1255, 1258 (Fla.2001). Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Clay Elec. Coop., Inc. v. Johnson, 873 So.2d 1182, 1185 (Fla. 2003). Any doubt as to an issue of material fact must be resolved in favor of the nonmoving party. Id.
In considering whether summary judgment was appropriate here, we must determine what the applicable statute of limitations is in this cause of action, when it began to accrue, and whether it has run, barring the claims of the Homeowners here.
Section 95.11(3)(p), Florida Statutes (2006) establishes a four year statute of limitations for any "action not specifically provided for in these statutes". Neither party contends that the four-year statute is inapplicable here. We agree with the parties and the trial court that the four-year statute of limitations should be applied.
The Fifth District applied the four-year statute of limitations in considering a challenge to a special assessment in Keenan v. City of Edgewater, 684 So.2d 226 (Fla. 5th DCA 1996). In Keenan, the appellants challenged a resolution imposing a special assessment on their properties to build a water and sewer treatment plant. The challenge was premised on the fact that the plant was to serve the entire city, but that only property owners in a portion of the city were being specially assessed to pay for the plant. Recognizing that there was little authority to support a determination as to "when a cause of action on a wrongful municipal special assessment accrues *979 for purposes of the running of the statute of limitations", the court held that the four-year statute begins to run at the time the special assessment is approved by resolution.
This Court cited Keenan approvingly in H & B Builders, Inc. v. City of Sunrise, 727 So.2d 1068 (Fla. 4th DCA 1999). In H & B Builders, this Court applied the four-year statute of limitations in a similar case challenging the validity of a special assessment against property owners for the construction of an industrial park. In finding that the statute barred the claim, this Court specifically rejected the notion that special assessments could be considered to be an ongoing violation, to be treated like an installment contract which could be challenged after the statute of limitations period had passed. Id. at 1070. The Court agreed with the trial court's finding "that the city has a need for certainty in its economic affairs, and that its policy decisions should not be subjected to a perennial review. . . ." Further, the Court found that the statute of limitations begins to accrue either "from the date the assessments are created or from the date the city approved . . . them", as this provided property owners with "adequate notice". Id. at 1071, citing J & L Enterprises v. Jones, 614 So.2d 1151 (Fla. 4th DCA 1993). See also Ves Carpenter Contractors, Inc. v. City of Dania, 422 So.2d 342 (Fla. 4th DCA 1982) (finding that although water and sewer impact fees were applied illegally, the challenge to them was barred by the four-year statute of limitations); Spring Lake Improvement District v. Tyrrell, 814 So.2d 1077 (Fla. 2d DCA 2002) (holding that the four-year statute of limitations applied to assessments which were void from their inception when challenged over ten years after being originally assessed).
In the case before us, drainage taxes were authorized in the Unit of Development 18 Program One Tax Resolution issued by the District in 1990 to pay for the bonds issued for improvements, including the Northlake Boulevard improvements. Annual assessments and impact fees were created by the District in 1993 when the Agreement was issued. The authorization of taxes, as well as the creation of assessments and impact fees, took place in 1990 and 1993, respectively. Keenan, H & B Builders and the other cases cited above all support the conclusion that the statute of limitations here began to accrue in 1990 when the drainage taxes were authorized by the District  a state created entity acting within the scope of its authority  or at the latest in 1993, when the assessments and impact fees were created by the District. Using either starting point, the statue of limitations would have run before this action was initiated.
The Homeowners attempt to distinguish Keenan and H & B Builders by arguing that the special assessments and impact fees were improperly limited to Unit 18 homeowners, which they had no way of knowing (for reasons not dispositive of the issue here). Therefore, they assert, the statute of limitations did not begin to accrue until they had notice of the exclusive nature of the assessments and impact fees being charged. While neither Keenan or H & B Builders specifically address the issue of notice, this Court in H & B Builders did refer approvingly to the trial court's discussion of notice, stating:
The trial court also recognized, in determining that H & B's claim is barred by the applicable four-year statute of limitations, that H & B "provided no cogent public policy reason why a four-year statute of limitations period that runs either from the date assessments are created or from the dates the city approved *980 the 1987 and 1992 refunding does not provide them with adequate notice."
Id. at 1071. Thus, this Court Seemingly rejected an argument for additional notice that would have extended the starting point for the statute of limitations beyond the creation or approval of an assessment. The Court concluded that municipalities need certainty in their economic affairs and that "policy decisions should not be subjected to perennial review". Id.
In the case now before us, we must balance the interests of the Homeowners in receiving notice of the exclusive nature of the Unit 18 assessments against the public policy concerns highlighted in H & B Builders. Weighing these competing interests, we find that, on these facts, the Homeowners interests are outweighed by the need of the District for certainty in creating water management plans and funding those plans.[5] As a result, the approval and creation of the assessments and impact fees here by the District provided sufficient notice to then existing and future homeowners of their obligations. This is true even if the assessments and impact fees were improperly levied. See Ves Carpenter, 422 So.2d 342; Spring Lake Improvement District, 814 So.2d 1077.
Because the statute of limitations ran well before the inception of this lawsuit, the trial court correctly granted the partial motion for summary judgment. As the statute of limitations bars the causes of action before us, we need not address the other arguments raised.
Affirmed.
STONE, and STEVENSON, JJ., concur.
NOTES
[1] The District was formerly known as Northern Palm Beach County Water Control District. The District was created by Chapter 59-994, Laws of Florida, as amended, and more recently codified by Chapter 2000-467, Laws of Florida. The District is generally governed by Chapter 298, Florida Statutes; however, the terms of the District's enabling act clearly specify that Chapter 298 applies "so far as [it is] not inconsistent with this Act [enabling act]." Chapter 59-994, § 2, Laws of Florida. See also Chapter 2000-467, Laws of Florida.
[2] Northern Palm Beach County Water Control District v. State of Florida, et. al., CL-90-4756-AH (15th Cir. June 6, 1990).
[3] Ibis National Venture was responsible for the development of the Ibis Golf and Country Club within Unit 18.
[4] Each of the Homeowners testified during depositions that they had received tax bills for the assessments after they purchased their homes and that they had paid the assessments.
[5] The uncertainty that would be created in a finding that the statute of limitations begins to accrue at an unspecified future date is underscored by the dates the relevant actions took place here-drainage taxes were authorized in 1990 (fourteen years before this action was initiated); a lawsuit was brought by Unit 18 homeowners challenging the issuance of bonds, which resulted in court validation of the bonds in 1990 (fourteen years before this action); assessments and impact fees were created in 1993 (eleven years prior to this action); the Notice of Taxing Authority (1990), the Declaration of Covenants (1990) and the Joint Project Agreement (1993), were each filed in the public records of Palm Beach County (fourteen and eleven years before this action was filed); and the Homeowners bought their properties inside Unit 18 in 1996, 1997 and 1998 (six to eight years before this action). The Homeowners contend that they did not receive notice of the exclusive nature of the assessments until a meeting in 2003, thirteen years after the authorization of the taxes on Unit 18 homeowners, and the date they believe the statute of limitations should begin to run.