BILLY TYLER, APPELLANT, V. RICHARD KYLER AND MARLIN
MCCLARTY, OMAHA POLICE OFFICERS, APPELLEES.
739 N.W.2d 463

Filed September 11, 2007. No. A-05-1445.

Billy Tyler, pro se.

Thomas O. Mumgaard, Deputy Omaha City Attorney, and Rosemarie R. Horvath for appellees.

IRWIN, SIEVERS, and CASSEL, Judges.

CASSEL, Judge.

## INTRODUCTION

Billy Tyler appeals from the order of the district court overruling his motion for summary judgment, sustaining a cross-motion for summary judgment, and dismissing his complaint. Because two police officers were entitled to qualified immunity on Tyler's claims that his constitutional rights were violated as a result of a traffic stop, in which Tyler had been a passenger in a vehicle but had left the vehicle prior to the time of the stop and refused to comply with an officer's command to return to the vehicle, we affirm.

## BACKGROUND

On November 7, 2004, Omaha police officers Richard Kyler and Marlin McClarty interacted with Tyler in association with a traffic stop of a vehicle in which Tyler had been the passenger. Tyler ignored Kyler's order to return to the vehicle, and at some point, Kyler drew his weapon. McClarty later responded to Kyler's call for assistance and helped arrest Tyler.

On March 1, 2005, Tyler initiated suit against Kyler and McClarty under Neb. Rev. Stat. § 25-101 et seq. (Reissue 1995) for assault and battery, illegal arrest, and false imprisonment. In Tyler's brief to this court, he asserts that "this was a 42 [U.S.C.

§] 1983 [(2000)] action," brief for appellant at 1; however, his complaint did not expressly refer to 42 U.S.C. § 983 (2000). Tyler alleged in the complaint that even though he had not committed a crime, Kyler and McClarty leveled their service revolvers at Tyler after he left the vehicle in which he had been a passenger and which vehicle was stopped for running a red light.

In their responsive pleading, Kyler and McClarty admitted that they were Omaha police officers and that they arrested Tyler on November 7, 2004, but they denied the remaining allegations of the complaint. They asserted as affirmative defenses that they were entitled to qualified immunity and that Tyler's intentional actions of resisting the lawful orders of a law enforcement officer proximately caused any injuries or damages suffered by Tyler.

Tyler filed a motion for summary judgment, and the officers filed a cross-motion for summary judgment. The district court subsequently held a hearing on the motions and received the affidavits of Tyler, Kyler, and McClarty.

Tyler stated in his affidavit that on the date in question, he was walking up stairs to a friend's home when Kyler turned east on Ellison Avenue and, upon seeing Tyler, ordered him to return to the vehicle. Tyler refused. Tyler stated that the reason for Kyler's contact with Tyler was a traffic violation but that the driver of the vehicle was still in the driver's seat. Tyler asserted that there was no cause to arrest him and that the arrest was illegal and in violation of the Fourth Amendment and the Omaha police department's standard operating procedure.

Kyler stated in his affidavit that on November 7, 2004, at approximately 8:10 a.m., he conducted a traffic stop of a vehicle for a signal violation. The driver was leaving the illegally parked vehicle as Kyler pulled up behind it. As Kyler instructed the driver to get back into the vehicle, the passenger, later identified as Tyler, got out of the vehicle and began to walk away from the traffic stop. Kyler told Tyler several times to stop and to get back into the vehicle, but Tyler did not comply. Kyler stated that Tyler stated several times, "'You don't have no [expletive] right to detain me.'" Kyler called dispatch for assistance because he felt uncertain of Tyler's actions and because Tyler was not heeding commands. After handcuffing the driver, Kyler saw Tyler hiding next to a building in an empty lot. Kyler again

commanded Tyler to stop, but Tyler did not comply. Kyler got into the police cruiser, followed Tyler, and saw that Tyler had climbed a fence onto a college campus. Kyler stopped the cruiser, drew his weapon, and commanded Tyler to stop. Tyler finally stopped. McClarty stated in his affidavit that he then conducted a preliminary search of Tyler and handcuffed him without resistance. McClarty stated that he used only the amount of force reasonably necessary to handcuff and search Tyler and place him into the cruiser. Tyler was later booked into custody for obstructing a police investigation, providing false information to an officer, and having outstanding warrants. Kyler stated that the police department's standard operating procedure is to use only that force reasonably necessary to effectively bring an incident under control while protecting the lives of the officers. He attached to his affidavit his incident report of November 7 and the police department's policy on the use of deadly and nondeadly force.

On November 21, 2005, the district court entered its order ruling on the motions. The court liberally construed Tyler's complaint to be an action under § 1983 and Nebraska's Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 1997 & Cum. Supp. 2004), alleging a deprivation of constitutional rights and assault, battery, false imprisonment, and excessive force. The court overruled Tyler's motion for summary judgment, sustained the officers' cross-motion for summary judgment, and dismissed Tyler's complaint.

Tyler timely appeals.

## ASSIGNMENTS OF ERROR

Tyler alleges, restated, that the district court erred in (1) granting summary judgment to Kyler and McClarty without a trial to resolve conflicts of fact and (2) finding no violation of Tyler's Fourth Amendment right to be free from an illegal search and seizure.

## STANDARD OF REVIEW

Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may

be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Alston v. Hormel Foods Corp.*, 273 Neb. 422, 730 N.W.2d 376 (2007). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Id.*

■ When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as the court deems just. *Johnson v. Knox Cty. Partnership*, 273 Neb. 123, 728 N.W.2d 101 (2007).

## ANALYSIS

■ The crux of Tyler's argument is that Kyler had no right to draw his weapon and stop Tyler when the only reason for the stop was the driver's running of a red light. There is no dispute that Tyler had been a passenger in the stopped vehicle; he stated in his complaint that he was a passenger in the vehicle stopped for running a red light. A party will be bound by allegations in the pleadings and cannot subsequently take a position inconsistent thereto, as such allegations are judicial admissions. *Stewart v. Bennett*, 273 Neb. 17, 727 N.W.2d 424 (2007).

We recognize, however, that a factual dispute exists as to whether Tyler was in the vehicle at the time of the stop. Tyler stated that he was out of the vehicle and going up some stairs when Kyler turned the corner in his cruiser and approached the vehicle. Kyler, on the other hand, stated that Tyler got out of the stopped vehicle as Kyler pulled up behind it and after Kyler instructed the driver to get back inside the vehicle. Kyler does not claim that the vehicle stopped in response to his activating the overhead lights on the cruiser; indeed, Kyler's affidavit never states that he turned on the overhead lights. Viewing the evidence in the light most favorable to Tyler, we must accept that Tyler was already out of the vehicle when Kyler pulled up behind it to initiate a traffic stop.

944

 Tyler alleges that he was unlawfully seized by Kyler and that the officers used excessive force. The Fourth Amendment to the U.S. Constitution provides for "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." A person is seized by police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement. *Brendlin v. California*, 551 U.S. 249, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007). A police officer may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned. *Id.* A "seizure" in the Fourth Amendment context occurs only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *State v. Anderson*, 258 Neb. 627, 605 N.W.2d 124 (2000).

 There is no dispute that Kyler stopped the vehicle for a traffic violation. A traffic violation, no matter how minor, creates probable cause to stop the driver of a vehicle. *State v. Voichahoske*, 271 Neb. 64, 709 N.W.2d 659 (2006). Once stopped, a law enforcement officer may conduct an investigation reasonably related in scope to the circumstances that justified the traffic stop. *Id.* The investigation may include asking the driver for an operator's license and registration, requesting that the driver sit in the patrol car, asking the driver about the purpose and destination of his or her travel, running a computer check to determine whether there are outstanding warrants for any of the vehicle's occupants, and questioning the passengers in the vehicle on similar routine matters to verify information provided by the driver. See *id.* In *State v. Sparr*, 13 Neb. App. 144, 688 N.W.2d 913 (2004), we determined that the detention of a former passenger should be examined as though the former passenger was a bystander to the investigation of a crime rather than as a passenger in a traffic stop. In *Sparr*, the former passenger had exited her friend's car, was entering her own vehicle, and was not suspected of a crime at the time that the police officer interacted with her. Similarly, in the instant case,

when we view the evidence in the light most favorable to Tyler, he was not in the vehicle and was no longer a passenger at the time of the stop. Thus, the investigatory authority flowing from an observed traffic violation, which under *State v. Voichahoske* extends to passengers, cannot in the instant case be applied to Tyler. The officers do not contend, nor do we find any support in the record, that apart from his former status as a passenger, the officers had a reasonable suspicion of criminal conduct on the part of Tyler. While we conclude that in the instant procedural context, we must examine the existence of probable cause or reasonable suspicion viewing Tyler as a bystander rather than a passenger, we cannot say that this distinction was immediately clear to the officers arriving on the scene.

Tyler does not assign error to the district court's finding that the officers were entitled to qualified immunity. Under § 1983, public officials sued in their individual capacity are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Shearer v. Leuenberger*, 256 Neb. 566, 591 N.W.2d 762 (1999), *disapproved on other grounds, Simon v. City of Omaha*, 267 Neb. 718, 677 N.W.2d 129 (2004). Whether an official may prevail in his or her qualified immunity defense depends upon the objective reasonableness of his or her conduct as measured by reference to clearly established law. *Id.* For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Id.*

In the instant case, there is no dispute that Tyler did not stop as commanded by Kyler and did not return to the vehicle. A reasonable person in Tyler's circumstances would not have felt free to leave when commanded by an officer to stop and to return to a vehicle. By the time Tyler finally submitted to Kyler's authority and stopped—which did not occur until Kyler raised his weapon—Tyler had continued to disobey Kyler's orders to stop and return to the vehicle, spoken to Kyler in a hostile manner, and tried to evade and hide from Kyler. To a reasonable official, it would not be clear that Kyler violated Tyler's constitutional rights; thus, Kyler is entitled to qualified immunity.

Tyler argues that Kyler used excessive force in leveling his service revolver, but the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. See *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989). The reasonableness inquiry in an excessive force case is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *id.* Under the circumstances, Kyler's drawing of his weapon was reasonable in order to compel Tyler to comply with Kyler's order to stop. Tyler failed to allege facts to show that McClarty's use of force in handcuffing him was unreasonable or excessive. Further, at the time of Tyler's arrest, his actions had provided the officers with probable cause to arrest him for obstruction of an officer. The officers' conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. They were entitled to qualified immunity.

## CONCLUSION

We conclude that the district court did not err in entering summary judgment in favor of the officers and in dismissing Tyler's complaint.

AFFIRMED.