Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/25/2016 09:05 AM CDT

Joan C. Phillips, appellant, v. Liberty Mutual Insurance
Company, defendant and third-party plaintiff, appellee,
and Douglas County, a political subdivision of the
State of Nebraska, and Timothy Dunning,
sheriff of Douglas County, Nebraska,
third-party defendants, appellees.

___ N.W.2d ___

Filed March 25, 2016.    No. S-15-324.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Summary Judgment.** On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.

4. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

5. ____: ____. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

6. **Political Subdivisions Tort Claims Act: Negligence: Proof.** A negligence action brought under the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012), has the same

elements as a negligence action against an individual. In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages.

7. **Negligence.** The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation.

8. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court.

9. **Negligence.** The existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances.

10. ____. Duty rules are meant to serve as broadly applicable guidelines for public behavior, i.e., rules of law applicable to a category of cases.

11. ____. Whether a duty exists is a policy decision.

12. **Police Officers and Sheriffs: Arrests.** Under the provisions of Neb. Rev. Stat. § 28-1412 (Reissue 2008), the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest.

13. ____: ____. Under the provisions of Neb. Rev. Stat. § 28-1412 (Reissue 2008), a police officer in making an arrest must use only reasonable force, which is that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances.

14. **Police Officers and Sheriffs.** The reasonableness inquiry as to excessive force is whether the officer's actions were objectively reasonable.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Raymond K. Wilson, Jr., Ronald E. Frank, and Mary M. Schott, of Sodoro, Daly, Shomaker & Selde, P.C., L.L.O., for appellant.

Sandra Connolly, Deputy Douglas County Attorney, for appellees Douglas County and Timothy Dunning.

HEAVICAN, C.J., WRIGHT, MILLER-LERMAN, CASSEL, and STACY, JJ.

MILLER-LERMAN, J.

## NATURE OF CASE

On April 1, 2010, Joan C. Phillips, the appellant, was injured when she was a bystander while two deputies of the Douglas County Sheriff's Department were in the process of taking a minor student into custody. On June 13, 2011, Phillips filed her complaint in the district court for Douglas County against Douglas County (the County) and Timothy Dunning, the elected sheriff of the County, the appellees. Phillips alleged that she was injured as a result of the deputies' negligence and sought damages. On March 25, 2013, the district court filed an order in which it granted the motion for summary judgment in favor of the County and Dunning. Following resolution of several procedural challenges, the district court again granted summary judgment in favor of the County and Dunning on April 2, 2015. Phillips appeals. Although our reasoning differs from that of the district court, we affirm.

## STATEMENT OF FACTS

The underlying facts in this case are generally not in dispute. Phillips is a resident of Omaha, Nebraska, in the County. The County is a political subdivision of Nebraska. Dunning, at all relevant times, was the elected sheriff of the County.

Phillips was employed at an alternative education center in Omaha. On April 1, 2010, deputies from the Douglas County Sheriff's Department arrived at the education center for the purposes of taking one of the minor students into custody. They had a warrant. As explained in our analysis, the parties and the district court treated the matter as effectuating an arrest, as do we.

Before arriving, the deputies had spoken to Phillips, who requested that they utilize the back door of the building so as not to disrupt the classroom. When the deputies arrived, Phillips led the student to the back door of the building. When Phillips and the student stepped out of the building, the student saw the deputies and ran back inside the building. The deputies ran after the student. While the deputies were in the process

of chasing after the student, the deputies knocked Phillips into a wall and to the ground. A deputy grabbed the student as the student held onto the doorknob to a classroom. The deputies removed the student's hands from the doorknob, placed her on the ground, and placed handcuffs on her.

On June 13, 2011, Phillips filed her complaint against the County and Dunning, alleging that the deputies were negligent when they knocked her into a wall and to the ground while in the process of taking the student into custody. Phillips alleged that as a result of this incident, she sustained personal injuries which resulted in physical and mental pain and suffering and that she had incurred medical expenses and lost wages. Phillips alleged in her complaint that she had made a claim pursuant to the Political Subdivisions Tort Claims Act (PSTCA), Neb. Rev. Stat. § 13-901 et seq. (Reissue 2012), and that the claim had been withdrawn pursuant to the PSTCA.

Apart from this lawsuit, Phillips had received workers' compensation benefits as a result of this incident. In her complaint, Phillips listed Liberty Mutual Insurance Company (Liberty Mutual) as a defendant. Liberty Mutual was Phillips' employer's workers' compensation insurer. Liberty Mutual was later realigned as a third-party plaintiff, and it is not appearing in this appeal.

The County and Dunning filed an answer on July 14, 2011, in which they generally denied the allegations contained in Phillips' complaint and denied liability. The County and Dunning also raised various affirmative defenses, including: The deputies "acted reasonably and with due care," Phillips' claim was barred by § 13-910 of the PSTCA, and Phillips failed to state a claim.

On January 12, 2012, the County and Dunning filed a motion for judgment on the pleadings, which the district court overruled on February 10.

On April 23, 2012, the County and Dunning filed a motion for leave to amend their answer, which the district court granted

on May 7. The County and Dunning amended their answer to add the affirmative defense of contributory negligence.

On November 26, 2012, the County and Dunning filed a motion for summary judgment and sought a dismissal of Phillips' complaint. The County and Dunning alleged that there are no genuine issues of material fact in this case and that they are entitled to judgment as a matter of law. On March 25, 2013, the district court filed its order in which it granted summary judgment in favor of the County and Dunning based upon its determination that Phillips' claim was derived from a battery on the student and was therefore barred by § 13-910(7) of the PSTCA, which bars suits based on intentional torts.

On April 25, 2013, Phillips appealed from the March 25 order. This appeal was docketed in the Court of Appeals as case No. A-13-366. On July 17, the Court of Appeals dismissed Phillips' appeal, because the March 25 order did not explicitly dispose of the claim against Liberty Mutual, citing Neb. Rev. Stat. § 25-1315(1) (Reissue 2008) and *Malolepszy v. State*, 270 Neb. 100, 699 N.W.2d 387 (2005). See *Phillips v. Douglas County*, 21 Neb. App. xx (No. A-13-366, July 17, 2013).

On March 12, 2014, Phillips filed a motion to realign the parties in which she generally asked to align Liberty Mutual as a third-party plaintiff, which would allow the court to address only the County and Dunning as defendants. The district court granted the motion in an order filed April 3. The court ordered that "the parties should be and hereby are realigned, making Liberty Mutual . . . a third party Plaintiff with respect to the above captioned matter."

On May 5, 2014, Phillips again appealed from the summary judgment order. This appeal was docketed in the Court of Appeals as case No. A-14-387. On July 7, the Court of Appeals dismissed Phillips' appeal, because the order appealed from was not a final, appealable order, citing Neb. Rev. Stat. § 25-1902 (Reissue 2008). See *Phillips v. Douglas County*, 22 Neb. App. xxxvi (No. A-14-387, July 7, 2014).

On April 2, 2015, the district court filed an order titled "Order Nunc Pro Tunc on Defendant[s'] Motion for Summary Judgment With Parties Aligned." The district court ordered that "Defendants [the County] and . . . Dunning's Motion for Summary Judgment is granted as to all claims by all parties." This is the order appealed from in the current case, docketed before us as case No. S-15-324.

## ASSIGNMENT OF ERROR

Phillips claims, restated, that the district court erred when it granted the County and Dunning's motion for summary judgment.

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Zornes v. Zornes*, 292 Neb. 271, 872 N.W.2d 571 (2015). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

## ANALYSIS

In this case, Phillips filed a complaint against the County and Dunning in which she alleged that the deputies "negligently knocked [her] into a wall and to the ground," proximately causing injuries and damages. The parties variously refer to the occasion of this alleged negligence as having occurred while the deputies were at the education center to cause the apprehension or imminent apprehension of the student, effectuate custody of the student, or execute a lawful warrant for the arrest of the student. Consistent with the manner in which the case was conducted before the district court,

we treat the matter as one involving effectuating an arrest of the student.

Following the filing of their amended answer and preliminary motions, the County and Dunning filed a motion for summary judgment. In connection with the summary judgment motion, the parties and the district court discussed whether the student was subjected to a battery and whether the intent thereof was transferred to Phillips, thus precluding recovery under § 13-910(7), which bars recovery for intentional torts. In this regard, based on their reading of *Britton v. City of Crawford*, 282 Neb. 374, 803 N.W.2d 508 (2011), they placed considerable, arguably undue, emphasis on the "intent" of the deputies. The district court reasoned that Phillips' claim was barred by § 13-910 of the PSTCA and sustained the motion.

Phillips claims that the district court erred when it granted the County and Dunning's motion for summary judgment. As explained more fully below, with due regard for the pleadings and evidence, we view this matter as a negligence action filed by Phillips against the County and Dunning for which there is no issue of material fact that they did not breach their duty and are entitled to summary judgment as a matter of law. Although our reasoning differs from that of the district court, as explained below, we affirm the district court's grant of summary judgment in favor of the County and Dunning. See *Doe v. Board of Regents*, 283 Neb. 303, 809 N.W.2d 263 (2012) (stating that appellate court may affirm lower court's ruling which reaches correct result, albeit based on different reasoning).

[3] On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Gonzalez v. Union Pacific RR. Co.*, 292 Neb. 281, 872 N.W.2d 579 (2015). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of

all reasonable inferences deducible from the evidence. *Id*. Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id*.

[4,5] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015). Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

[6] Subject to certain exceptions, "in all suits brought under the [PSTCA] the political subdivision shall be liable in the same manner and to the same extent as a private individual." § 13-908. Accord *Connelly v. City of Omaha*, 284 Neb. 131, 816 N.W.2d 742 (2012). Thus, we have recognized that a negligence action brought under the PSTCA has the same elements as a negligence action against an individual. See *Connelly v. City of Omaha, supra*. In order to recover in a negligence action, a plaintiff must show a legal duty owed by the defendant to the plaintiff, a breach of such duty, causation, and damages. *Peterson v. Kings Gate Partners*, 290 Neb. 658, 861 N.W.2d 444 (2015).

[7,8] The question whether a legal duty exists for actionable negligence is a question of law dependent on the facts in a particular situation. *Id*. When reviewing a question of law, an appellate court resolves the question independently of the conclusion reached by the trial court. *Kimminau v. City of Hastings*, 291 Neb. 133, 864 N.W.2d 399 (2015). In the past, we used the risk-utility test to determine the existence of a tort duty. See *Peterson v. Kings Gate Partners, supra*. However, in *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. 205, 784 N.W.2d 907

(2010), we abandoned the risk-utility test and adopted the duty analysis set forth in the Restatement (Third) of Torts: Liability for Physical and Emotional Harm (2010). Under this approach, an actor ordinarily has a duty to exercise reasonable care when the actor's conduct creates a risk of physical harm. *Riggs v. Nickel*, 281 Neb. 249, 796 N.W.2d 181 (2011). This approach examines the defendant's conduct, not in terms of whether the defendant had a "duty" to take particular actions, but, rather, in terms of whether the defendant's conduct breached the duty to exercise the care that would be exercised by a reasonable person under the circumstances. *Id*.

In *A.W.*, we stated:

> [F]oreseeable risk is an element in the determination of negligence, not legal duty. In order to determine whether appropriate care was exercised, the fact finder must assess the foreseeable risk at the time of the defendant's alleged negligence. The extent of foreseeable risk depends on the specific facts of the case and cannot be usefully assessed for a category of cases; small changes in the facts may make a dramatic change in how much risk is foreseeable. Thus, courts should leave such determinations to the trier of fact unless no reasonable person could differ on the matter.

280 Neb. at 216, 784 N.W.2d at 917.

[9-11] After *A.W.*, the existence of a duty generally serves as a legal conclusion that an actor must exercise that degree of care as would be exercised by a reasonable person under the circumstances. See *id.* See, also, *Peterson v. Kings Gate Partners, supra*. Moreover, "[d]uty rules are meant to serve as broadly applicable guidelines for public behavior, i.e., rules of law applicable to a category of cases." *A.W. v. Lancaster Cty. Sch. Dist. 0001*, 280 Neb. at 212-13, 784 N.W.2d at 914-15. Whether a duty exists is a policy decision. *Peterson v. Kings Gate Partners, supra*. In this case, we conclude as a matter of law that the deputies who were effectuating the arrest of the student had a duty and were required to exercise that degree

of care toward innocent persons, such as Phillips, as would be exercised by a reasonable deputy effectuating an arrest under the circumstances.

Our analysis is informed by statutes and the common law in this area. Neb. Rev. Stat. § 28-1412(1) (Reissue 2008) states:

> Subject to the provisions of this section and of section 28-1414, the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest.

Neb. Rev. Stat. § 28-1414 (Reissue 2008), referred to in § 28-1412(1), states in part:

> (3) When the actor is justified under sections 28-1408 to 28-1413 in using force upon or toward the person of another but he recklessly or negligently injures or creates a risk of injury to innocent persons, the justification afforded by those sections is unavailable in a prosecution for such recklessness or negligence towards innocent persons.

[12-14] We have stated that under the provisions of § 28-1412, the use of force upon or toward the person of another is justifiable when the actor is making or assisting in making an arrest and the actor believes that such force is immediately necessary to effect a lawful arrest. *State v. Thompson*, 244 Neb. 189, 505 N.W.2d 673 (1993). Under the provisions of § 28-1412, a police officer in making an arrest must use only reasonable force, which is that amount of force which an ordinary, prudent, and intelligent person with the knowledge and in the situation of the arresting police officer would have deemed necessary under the circumstances. *State v. Thompson, supra*; *Wagner v. City of Omaha*, 236 Neb. 843, 464 N.W.2d 175 (1991). See, also, *Waldron v. Roark*, 292 Neb. 889, ___ N.W.2d ___ (2016). The reasonableness inquiry as to excessive force is whether the officer's actions were objectively reasonable. See *Tyler v. Kyler*, 15 Neb. App. 939, 739 N.W.2d 463 (2007) (affirming summary judgment where bystander to stop

for traffic violation became subject of arrest and determining officer's use of force was reasonable as matter of law based on objective standard). See, also, *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

In regard to innocent third persons who are injured while an officer is effectuating an arrest, we have stated that the duty of law enforcement officers to apprehend violators of the law must be balanced with a duty of care to the general public as well. *Lee v. City of Omaha*, 209 Neb. 345, 307 N.W.2d 800 (1981). A similar duty has been recognized by other jurisdictions. See, e.g., *Giant Food v. Scherry*, 51 Md. App. 586, 590, 444 A.2d 483, 486 (1982) (stating that "a person has, in effect, a double responsibility—one to the prospective arrestee not to use unnecessary force against him, and one to the public at large to use even reasonable force in a reasonable manner"). In *Giant Food*, the Court of Special Appeals of Maryland described the circumstances in which an officer who is effectuating an arrest may be held liable for injuring an innocent third person. The court stated:

> These kinds of situations, in which an innocent bystander is injured or killed in the course of an attempt to apprehend a criminal or defend an attack on one's person or property, arise in a variety of contexts—some more life-threatening to the actor than others, some involving felons and felonies, others involving misdemeanants and misdemeanors. The context is important in determining the reasonableness of the action taken, but the basic standard seems to be the same. Where the evidence shows that the actor, whether a police officer or a private citizen, acted without due regard to the danger caused to innocent third parties, he (and his employer) have been held liable. . . .
>
> Conversely, where the evidence establishes that the defendant acted reasonably, liability has been denied.

*Giant Food v. Scherry*, 51 Md. App. at 591-92, 444 A.2d at 487 (collecting cases).

The treatment we afford the innocent bystander to an arrest has found support in the construction of a statute comparable to § 28-1412, as well as in the common law as reflected in the Restatement (Second) of Torts (1965). With respect to the statute, in *Hyatt v. Anoka Police Dept.*, 691 N.W.2d 824, 827 (Minn. 2005), the Minnesota Supreme Court construed the Minnesota reasonable force statute, Minn. Stat. Ann. § 609.06, subd. 1 (West 2003), which provided:

"Except as otherwise provided in subdivision 2, reasonable force may be used upon or toward the person of another without the other's consent when the following circumstances exist or the actor reasonably believes them to exist:

"(1) when used by a public officer or one assisting a public officer under the public officer's direction:

"(a) in effecting a lawful arrest[.]"

The Minnesota Supreme Court stated as follows:

[T]he authorization in section 609.06 is stated broadly to include force that is directed "*toward* the person of another." . . .

The statute does not specifically address the legal consequence where reasonable force is directed toward the arrestee but causes harm to an innocent bystander. But reference to the common law provides some guidance on that issue. Generally, tort law recognizes that the use of force . . . is "privileged" if it is reasonable and it is used for the purpose of effecting a lawful arrest. *See, e.g.*, Restatement (Second) of Torts § 118 (1965) ("The use of force against another for the purpose of effecting his arrest and the arrest thereby effected are privileged if [several applicable] conditions . . . exist"). And, in that context, the privilege extends to harm to an innocent bystander caused by force directed toward the arrestee, unless under the circumstances it was "unreasonable for [the actor] to take the chance of causing grave harm

to bystanders." Restatement (Second) of Torts § 137 cmt. c (1965).

*Hyatt v. Anoka Police Dept.*, 691 N.W.2d at 828-29 (emphasis in original).

The statutory interpretation and comments of the Minnesota Supreme Court in *Hyatt* find application to the present case, where it is undisputed that the contact the deputies had with Phillips occurred prior to their contact "upon" the student. That is, the behavior of the deputies was directed "toward" the student but not yet "upon" the student at the time they made contact with Phillips. See § 28-1412. The force used in connection with the arrest of the student, if reasonable, is privileged, and in this context, the privilege extends to the harm to the innocent bystander, Phillips, caused by force directed "toward" the student, unless it was unreasonable for the officers to take the chance of causing harm to Phillips.

Our statutes and case law are in accord with the Restatement (Second), *supra*. As recognized by the Minnesota Supreme Court in *Hyatt*, the Restatement (Second), *supra*, § 118, generally provides that an officer is privileged to use reasonable force in effectuating a lawful arrest. The Restatement extends this privilege to harm caused to innocent bystanders, unless the officer's actions were unreasonable under the circumstances. See Restatement (Second), *supra*, § 137.

The Restatement provides commentary to illustrate when an officer's conduct while effectuating an arrest creates an unreasonable risk of harm to an innocent third person:

> [I]f an actor is privileged to shoot at an escaping felon, he is not liable to a third person harmed by a stray bullet, if when he shot there was little or no probability that any person other than the felon would be hit. But when he shoots into a crowded thoroughfare, and unintentionally hits a passerby, his act is unprivileged if, in view of the surrounding conditions, including the nature of the crime for which he seeks to arrest, recapture, or maintain

custody, the harm which may ensue if he does not act, and his skill or lack of skill in the use of the weapon, it is unreasonable for him to take the chance of causing grave harm to bystanders.

Restatement (Second) of Torts § 137, comment *c.* at 246 (1965).

In the present case, the question before us is whether there is a genuine issue of material fact regarding whether the deputies were acting reasonably at the point in time when the deputies "knocked [Phillips] into a wall and to the ground" while they were effectuating the arrest of the student. Viewing the evidence in the light most favorable to Phillips, we determine that there is no material issue of fact regarding whether the deputies acted reasonably. The evidence shows that the deputies arrived at the school pursuant to a warrant to take the student into custody. When the deputies arrived, Phillips escorted the student out the back door of the building, but when the student saw the deputies, she turned and ran back into the building. The deputies chased after the student in order to effectuate the arrest. As the deputies ran past Phillips, they knocked her into a wall and to the ground. Nothing in the record suggests that the deputies were acting recklessly or unreasonably at the point in time when they made contact with Phillips. Compare *Giant Food v. Scherry*, 51 Md. App. 586, 444 A.2d 483 (1982) (in case involving apprehension of robber, stating it was question for fact finder whether security guard acted unreasonably by firing second shot at vehicle after first shot failed to stop robber's fleeing vehicle, which second shot shattered woman's window in apartment complex, causing woman mental and emotional distress).

There is no evidence in the record before us that the deputies were utilizing weapons in effectuating the arrest of the student or that they were chasing the student in a way that could be described as reckless. Based upon the framework set forth above, the deputies were allowed to use a reasonable amount of force in effectuating the arrest of the student, and

nothing in the record indicates that at the point in time when they bumped into Phillips, the deputies realized or objectively should have realized that their actions created an unreasonable risk of harm to any innocent third persons, such as Phillips.

Although whether the deputies acted unreasonably and breached their duty is a question of fact, even viewing the facts in the light most favorable to Phillips, no reasonable fact finder could find that the deputies breached their duty to exercise reasonable care with respect to Phillips. The County and Dunning demonstrated that they were entitled to judgment as a matter of law, and thus, the burden shifted to Phillips to present evidence showing the existence of a material issue of fact regarding breach which would prevent entry of judgment against her. See *Roskop Dairy v. GEA Farm Tech.*, 292 Neb. 148, 871 N.W.2d 776 (2015). We have reviewed the record and find no evidence which raises a question of material fact regarding the reasonableness of the deputies' actions or prevents entry of judgment in favor of the County and Dunning.

## CONCLUSION

Even viewing the evidence in the light most favorable to Phillips, we determine that the County and Dunning were entitled to summary judgment. Although our reasoning differs from that of the district court, we affirm the order of the district court which granted summary judgment in favor of the County and Dunning.

AFFIRMED.

CONNOLLY, J., not participating.