Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/27/2016 09:05 AM CDT

Klaus P. Lindner, appellant, v. Douglas Kindig,
mayor of the City of La Vista,
et al., appellees.

___ N.W.2d ___

Filed May 27, 2016.    No. S-15-630.

1. **Summary Judgment: Appeal and Error.** An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

2. ____: ____. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence.

3. **Limitations of Actions.** The determination of which statute of limitations applies is a question of law.

4. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.

5. **Summary Judgment.** On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists.

6. ____. Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law.

7. **Summary Judgment: Proof.** A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial.

8. ____: ____. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible

contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law.

9. **Constitutional Law: Limitations of Actions.** A constitutional claim can become time barred just as any other claim can.

10. **Limitations of Actions.** The period of limitations begins to run upon the violation of a legal right, that is, when an aggrieved party has the right to institute and maintain suit.

11. ____. The time at which a cause of action accrues will differ depending on the facts of the case.

Appeal from the District Court for Sarpy County: WILLIAM B. ZASTERA, Judge. Affirmed.

K.C. Engdahl for appellant.

Gerald L. Friedrichsen, of Fitzgerald, Schorr, Barmettler & Brennan, P.C., L.L.O., for appellees.

HEAVICAN, C.J., WRIGHT, CONNOLLY, MILLER-LERMAN, CASSEL, STACY, and KELCH, JJ.

MILLER-LERMAN, J.

### NATURE OF CASE

This is the second time this case has been before us. On December 16, 2011, Klaus P. Lindner filed a complaint in the district court for Sarpy County against the City of La Vista, Nebraska (City), and its mayor and city council members (collectively appellees), seeking a declaratory judgment that ordinance No. 979, creating an offstreet parking district adjoining a Cabela's store, is unconstitutional. The district court found that the action was time barred and granted appellees' motion to dismiss. Lindner appealed. In *Lindner v. Kindig*, 285 Neb. 386, 826 N.W.2d 868 (2013) (*Lindner I*), we determined that we could not tell from the face of Lindner's complaint when Lindner's cause of action accrued. Therefore, we reversed the judgment of the district court and remanded the cause for further proceedings.

Upon remand, appellees filed a motion for summary judgment. A hearing was held at which evidence was received.

On June 15, 2015, the district court filed an order in which it determined that the 4-year catchall limitations period set forth in Neb. Rev. Stat. § 25-212 (Cum. Supp. 2014) applied and that Lindner's action accrued more than 4 years before he filed his complaint. The district court identified several accrual dates, to wit, when appellees opted to pay for the cost of offstreet parking through general revenues and sales tax revenues, enacted ordinance No. 983 authorizing the issuance of general obligation bonds, issued the bonds, and first paid on the bonds. Because each of these events occurred greater than 4 years before Lindner filed his complaint, the district court granted appellees' motion for summary judgment. We determine that the district court did not err when it granted appellees' motion for summary judgment, and we affirm.

## STATEMENT OF FACTS

In *Lindner I*, we set forth the facts underlying this case as follows:

On January 17, 2006, the City . . . passed and approved ordinance No. 979. The ordinance provided for "the creation of vehicle offstreet parking District No. 1 of the City" as authorized under Neb. Rev. Stat. § 19-3301 et seq. (Reissue 2012). According to the ordinance, the costs of the offstreet parking facilities—estimated by the city engineer to be $9 million—would be paid for from general taxes, special property taxes or assessments on property within the offstreet parking district, and/or general property taxes, with financing by issuance of the City's general obligation bonds.

On December 16, 2011, . . . Lindner, a resident of the City, filed a complaint against . . . appellees. . . . Lindner sought declaratory judgment and a declaration of the unconstitutionality of the ordinance.

Lindner alleged that the ordinance violated the Nebraska Constitution in two ways: first, by paying for

the costs through a general property tax levy in violation of article VIII, § 6, and second, by granting a Cabela's store a special benefit in violation of article III, § 18. . . . [H]e alleged that under the ordinance, appellees had agreed to pay for and bear the entire cost of the parking facilities directly benefiting the Cabela's store. Lindner believed that the cost was paid with sales tax revenues drawn from municipal general funds. . . . Lindner alleged that as a resident of the City, he was "aggrieved as a consequence of municipal revenues having been applied in an unconstitutional manner for the peculiar benefit of a private enterprise and in a manner which contravenes the constitutional prohibition on granting or establishment of special privileges and immunities."

Lindner therefore asked the district court to order and declare that "any and all agreements or practices as above detailed are null, void and unconstitutional" and to issue an order restraining and enjoining ongoing enforcement of or adherence to the ordinance. He also requested that appellees be ordered to impose and levy any necessary special assessments upon the property which was specially benefited by the parking facilities.

Appellees filed a motion to dismiss the complaint under Neb. Ct. R. Pldg. § 6-1112(b)(6). They alleged that the claim was barred by the "applicable time periods" for challenging the ordinance.

The district court granted appellees' motion to dismiss and dismissed the complaint with prejudice. The court reasoned that the complaint was subject to the 4-year catchall statute of limitations set forth in Neb. Rev. Stat. § 25-212 (Cum. Supp. 2012). The court determined that the limitations period began to run on the date that the ordinance was passed and approved—January 17, 2006—giving Lindner until January 17, 2010, to bring the current action. Because Lindner did not file the complaint until December 16, 2011, the court

concluded that the complaint was barred by the statute
of limitations.

Lindner timely appealed . . . .

285 Neb. at 387-89, 826 N.W.2d at 870-71.

On appeal in *Lindner I*, Lindner claimed that

the district court erred in (1) concluding that his com-
plaint failed to state a claim upon which relief could be
granted, (2) dismissing his complaint with prejudice, and
(3) determining that the complaint was barred by a 4-year
statute of limitations. Lindner also assert[ed] that it was
error as a matter of law to determine that a 4-year statute
of limitations can operate to bar claims of unconstitution-
ality directed to a municipal ordinance.

285 Neb. at 389, 826 N.W.2d at 871.

In our analysis in *Lindner I*, we noted that the ques-
tion of the ordinance's constitutionality was not properly
before us. We nevertheless assumed without deciding that the
constitutional provisions identified in Lindner's complaint
applied to the ordinance, but we did not express an opinion
regarding the constitutionality of the ordinance or its contin-
ued viability.

In *Lindner I*, we then considered the issue of whether
Lindner's claim that the ordinance was unconstitutional was
barred by a statute of limitations, and we stated that a "'consti-
tutional claim can become time-barred just as any other claim
can.'" 285 Neb. at 391, 826 N.W.2d at 872, quoting *Block v.
North Dakota*, 461 U.S. 273, 103 S. Ct. 1811, 75 L. Ed. 2d
840 (1983). We further noted that "[t]he period of limitations
begins to run upon the violation of a legal right, that is, when
an aggrieved party has the right to institute and maintain suit."
*Id.* at 392, 826 N.W.2d at 873.

In *Lindner I*, we stated:

Lindner's claim of harm ultimately depends upon the
funding mechanism actually employed by appellees.
According to the ordinance, the costs of the offstreet
parking facilities would be paid for from general taxes,

special property taxes or assessments on property within the offstreet parking district, and/or general property taxes, with financing by issuance of the City's general obligation bonds. In other words, the language of the ordinance was broad enough to allow for payment of the costs through a special assessment on Cabela's. And if that had occurred, Lindner's allegations of unconstitutionality would seem to disappear, because his complaint appears to concede that a special assessment would have been constitutional.

But instead, [upon consideration of a ruling granting a motion to dismiss and] accepting as we must at this stage the truth of Lindner's allegations, appellees opted to pay for the costs of the offstreet parking district through a general property tax levy or sales tax revenues drawn from municipal general funds. It was this decision or its implementation that adversely affected Lindner's rights and allegedly gave rise to his right to institute suit.

285 Neb. at 392, 826 N.W.2d at 873.

In *Lindner I*, we could not tell from the face of Lindner's complaint when appellees made the decision choosing the specific funding mechanism to be used or implemented that decision, and we stated that "[i]t is certainly plausible that the decision to use general funding sources or the implementation of that decision was made within 4 years immediately before the filing of Lindner's complaint." 285 Neb. at 393, 826 N.W.2d at 874. Because Lindner's complaint did not allege when appellees decided to pay the costs from general sources or when they implemented the decision, we determined that the complaint did not disclose on its face that Lindner's claim was time barred. We stated:

Although we agree with the district court that the 4-year catchall limitations period set forth in § 25-212 potentially applies, we disagree with the court's conclusion that the limitations period began to run when

the ordinance was passed. Because we cannot determine when Lindner's cause of action accrued in this case, we reverse the judgment and remand the cause for further proceedings.

*Id*. at 393-94, 826 N.W.2d at 874.

After the cause was remanded to the district court, appellees filed a motion for summary judgment on May 22, 2015. At the hearing on the motion for summary judgment, appellees offered and the court received 14 exhibits, and Lindner offered and the court received 3 exhibits. The undisputed evidence showed that on March 21, 2006, the City passed and approved ordinance No. 983, which authorized "THE ISSUANCE OF GENERAL OBLIGATION OFF-STREET PARKING BONDS, SERIES 2006," in the principal amount of $7,940,000 to pay the costs of the offstreet parking facilities. The ordinance stated that the date of the original issue for the bonds was April 15, 2006, and that interest on the bonds was payable on April 15 and October 15 of each year, commencing with October 15, 2006.

An affidavit of the City's director of administrative services was admitted into evidence, and the director stated that the City had a certain checking account into which some of the City's general revenues and all of its sales tax revenue were deposited. The director further stated in his affidavit that "[a]ll payments of principal and interest on the Off-Street Parking Bonds" were made from that checking account. According to the director's affidavit and bank statements that were admitted into evidence, on October 16, 2006, the City made the first interest payment on the bonds in the amount of $179,366.25. On April 16, 2007, the City made a payment of interest in the amount of $179,366.25 and a payment of principal in the amount of $280,000.

The evidence further showed that on July 11, 2007, Lindner sent an e-mail to the City's administrator asking if the City was going to impose a special assessment on Cabela's to pay for the offstreet parking. In a letter to Lindner dated July 12,

2007, the administrator stated that the City did "not intend to specially assess Cabela's for the off-street parking."

On June 15, 2015, the district court filed an order in which it granted appellees' motion for summary judgment. The district court concluded that the 4-year catchall statute of limitations found in § 25-212 applied. In its order, the court stated:

> The undisputed facts show that [the City] paid the costs of the off-street parking facility not by special assessments, but through general revenues and sales tax revenues. Further, the undisputed facts also show that [the City] made and implemented its decision to pay for the off-street parking facilities with sales tax revenues (1) in March 2006, when it passed Ordinance No. 983; (2) on April 15, 2006, when the General Obligation Off-Street Parking Bonds, Series 2006 were issued; and (3) on October 16, 2006, when it made its first payment of interest on the General Obligation Off-Street Parking Bonds, Series 2006. All of these events occurred more than four years prior to December 16, 2011, the date in [sic] which [Lindner] filed this action. Accordingly, [Lindner] failed to comply with the applicable 4 year statute of limitations.

The district court determined there was no genuine issue of material fact, and it granted appellees' motion for summary judgment.

Lindner appeals.

## ASSIGNMENTS OF ERROR

Lindner claims, consolidated and restated, that the district court erred when it (1) determined that Lindner's complaint is barred by the 4-year statute of limitations, (2) relied on our opinion in *Lindner I* "as being dispositive or controlling with regard to the issue of whether [Lindner's] claim is barred by operation of a four year period of limitations," and (3) determined that the 4-year statute of limitations applies to Lindner's claim even though the nature of Lindner's claim is an "ongoing

and continuously accruing constitutional wrong, deprivation or violation."

## STANDARDS OF REVIEW

[1,2] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Sulu v. Magana*, 293 Neb. 148, ___ N.W.2d ___ (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Id.*

[3,4] The determination of which statute of limitations applies is a question of law. *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013). An appellate court independently reviews questions of law decided by a lower court. *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016).

## ANALYSIS

Lindner generally contends that the district court erred when it granted appellees' motion for summary judgment based upon its determination that Lindner's constitutional challenge to ordinance No. 979 is subject to and barred by the 4-year catchall statute of limitations found in § 25-212. As explained below, we find no merit to Lindner's contentions.

[5,6] The principles regarding summary judgment are well established. On a motion for summary judgment, the question is not how the factual issue is to be decided but whether any real issue of material fact exists. *Phillips v. Liberty Mut. Ins. Co.*, 293 Neb. 123, 876 N.W.2d 361 (2016). In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment

was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Sulu v. Magana, supra*. Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Phillips v. Liberty Mut. Ins. Co., supra*.

[7,8] A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Id*. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

We first note that in Lindner's complaint, he sought a declaratory judgment that ordinance No. 979 is unconstitutional because it violates article VIII, § 6, and article III, § 18, of the Nebraska Constitution. As we did in *Lindner I*, for the purposes of this opinion, we will assume without deciding that these constitutional provisions identified in Lindner's complaint apply to the ordinance; however, we note that in doing so, we make no determinations regarding the constitutionality of the ordinance or its continued viability. With this framework in mind, we turn to whether the district court correctly determined that Lindner's claim is barred by the 4-year statute of limitations.

Lindner alleged in his amended reply that "each day" constitutes a "separate accrual date," and he therefore generally asserts that his claim that the ordinance is unconstitutional is not the type of claim that is subject to any statute of limitations. Lindner more specifically contends that his claim is not subject to any limitations period, because the nature of his claim is that of "an alleged ongoing and continuously accruing constitutional wrong, deprivation or violation."

[9] We rejected this argument in *Lindner I*, in which we quoted the U.S. Supreme Court and stated that a "'constitutional claim can become time-barred just as any other claim can.'" 285 Neb. at 391, 826 N.W.2d at 872, quoting *Block v. North Dakota*, 461 U.S. 273, 103 S. Ct. 1811, 75 L. Ed. 2d 840 (1983). With respect to the purpose of statutes of limitations periods, in *Lindner I* we stated:

> Statutes of limitations rest on a common understanding that wrongs for which the law grants a remedy are subject to a requirement that, in fairness, the party wronged must pursue the remedy in a timely fashion. This understanding, in turn, addresses three concerns: first, for stale claims, where memories fade and witnesses and records may be missing; second, for repose—that after some period of time, claims should not continue unresolved; and third, that a plaintiff cannot sleep on his or her rights and then suddenly demand a remedy, without creating a greater wrong against the party charged and a wrong against the peace of the community.

285 Neb. at 391, 826 N.W.2d at 872-73.

We then recognized in *Lindner I* that Lindner was making a facial challenge to the constitutionality of the ordinance, but we observed that the distinction between a facial challenge as opposed to an "'as-applied'" challenge "is not of great import for statute of limitations purposes." 285 Neb. at 391-92, 826 N.W.2d at 873. We stated:

> "[A] case alleging facial unconstitutionality is ripe not simply when the law is passed but, just like an as-applied challenge, when the government acts pursuant to that law and adversely affects the plaintiff's rights." "There is simply no categorical rule that a law becomes insulated from facial challenge by the mere passage of time."

*Id*. at 392, 826 N.W.2d at 873.

In his complaint, Lindner alleged that he was the aggrieved party, and in *Lindner I*, we identified certain events which would affect Lindner's rights. And because Lindner is the

aggrieved party, we need not consider facial challenge timing issues brought by third parties. See Timothy Sandefur, *The Timing of Facial Challenges*, 43 Akron L. Rev. 51 (2010).

[10,11] Accrual is a preliminary "question necessary for getting the plaintiff through the courthouse door." *Id*. at 61. Regarding when a limitations period begins to run, we stated in *Lindner I*:

> The period of limitations begins to run upon the violation of a legal right, that is, when an aggrieved party has the right to institute and maintain suit. "The time at which a cause of action accrues will differ depending on the facts of the case, but it will come whenever the plaintiff's rights are finally and clearly affected pursuant to the law that [he or] she believes is unconstitutional."

285 Neb. at 392, 826 N.W.2d at 873.

Lindner has not persuaded us that our reasoning in *Lindner I* was in error. Based upon our reasoning and determination set forth in *Lindner I*, we do not agree with Lindner's contention that his claim should be subjected to perennial review, and we therefore reject his argument that his claim that the ordinance is unconstitutional is not subject to any statute of limitations.

Our reasoning is in accord with that of other jurisdictions. In *H & B Builders, Inc. v. City of Sunrise*, 727 So. 2d 1068 (Fla. App. 1999), a Florida appellate court concluded that a 4-year statute of limitations applied to the plaintiff's challenge to a city's special assessment bonds. In determining that the statute of limitations should apply to the plaintiff's claim, the court stated that the city "'has a need for certainty in its economic affairs,' and that its policy decisions should not be subjected to a perennial review." *Id*. at 1071. See, also, *Fredrick v. Northern Palm Beach Cty. Imp.*, 971 So. 2d 974 (Fla. App. 2008) (determining that homeowners' challenge to validity of property assessments was barred by statute of limitations).

Having determined that Lindner's claim is subject to a statute of limitations, we must determine which statute of limitations applies. The determination of which statute of limitations applies is a question of law. *Sherman T. v. Karyn N.*, 286 Neb. 468, 837 N.W.2d 746 (2013). An appellate court independently reviews questions of law decided by a lower court. *Adair Asset Mgmt. v. Terry's Legacy*, 293 Neb. 32, 875 N.W.2d 421 (2016).

The district court determined that the 4-year catchall limitations period set forth in § 25-212 applies to Lindner's claim. Section 25-212 provides that "[a]n action for relief not otherwise provided for in Chapter 25 can only be brought within four years after the cause of action shall have accrued." In *Lindner I*, it was not necessary to determine which statute of limitations applied, and we stated that the 4-year statute of limitations set forth in § 25-212 "potentially applies." 285 Neb. at 393, 826 N.W.2d at 874.

Lindner has not pointed us to a statute of limitations other than the 4-year catchall statute of limitations that could potentially apply to his claim. Appellees contend that the 4-year catchall statute of limitations applies. We are aware that in certain instances, a public entity is subject to a specific limitations period set by statute. See *Block v. North Dakota,* 461 U.S. 273, 103 S. Ct. 1811, 75 L. Ed. 2d 840 (1983). However, having reviewed the nature of Lindner's allegations, we see no statute of limitations that specifically applies to Lindner's constitutional claim.

We have stated that § 25-212 "provides the catchall limitations period for *any* action seeking relief for which the Legislature has not enacted a more specific statute of limitations." *Adkins v. Burlington Northern Santa Fe RR. Co.*, 260 Neb. 156, 161, 615 N.W.2d 469, 472 (2000) (emphasis in original). Consistent with this purpose and in the absence of a specific limitations period set by statute which applies to Lindner's claim, we conclude that the 4-year catchall limitations period set forth in § 25-212 controls.

Having concluded that the 4-year statute of limitations applies to Lindner's claim, we must consider whether the district court correctly determined that Lindner's claim is barred by the 4-year statute of limitations. In *Lindner I*, we determined that the district court had erred when it determined that the 4-year statute of limitations began to run when ordinance No. 979 was passed. We stated that according to the ordinance, the costs of the offstreet parking facilities would be paid from general taxes, special property taxes or assessments on property within the parking district, and/or general property taxes, with financing by issuance of the City's general obligation bonds. We recognized that the language of the ordinance was broad enough to pay for the costs through a special assessment on Cabela's, and if this had occurred, then Lindner's claim would seem to disappear.

We further noted in *Lindner I* that if appellees opted to pay for the costs of the offstreet parking district through a general property tax levy or sales tax revenues drawn from municipal general funds, it would have been "this decision or its implementation that adversely affected Lindner's rights and allegedly gave rise to his right to institute suit." 285 Neb. at 392, 826 N.W.2d at 873. However, we stated in *Lindner I* that we could not tell from the face of Lindner's complaint "*when* appellees made the decision choosing the specific funding mechanism to be used or implemented that decision." 285 Neb. at 393, 826 N.W.2d at 873 (emphasis in original). In remanding the cause in *Lindner I*, we stated that

> [b]ecause the complaint does not allege when appellees decided to pay the costs from general sources or when [they] implemented the decision, the complaint does not disclose on its face that it is time barred. And in the absence of such allegations, we cannot determine with specificity when the claim accrued.

285 Neb. at 393, 826 N.W.2d at 874.

Upon remand, following an evidentiary hearing, the district court filed an order in which it stated that the evidence

showed that appellees opted to pay for the costs of the offstreet parking through general revenues and sales tax revenues, and not through special assessments. The district court identified three possible dates upon which Lindner's claim accrued. It stated:

> [T]he undisputed facts . . . show that [the City] made and implemented its decision to pay for the off-street parking facilities with sales tax revenues (1) in March 2006, when it passed Ordinance No. 983; (2) on April 15, 2006, when the General Obligation Off-Street Parking Bonds, Series 2006 were issued; and (3) on October 16, 2006, when it made its first payment of interest on the General Obligation Off-Street Parking Bonds, Series 2006.

These dates represent when appellees made their decision regarding which funding mechanism to use and when they implemented that decision, and the district court stated that "[a]ll of these events occurred more than four years prior to December 16, 2011, the date in [sic] which [Lindner] filed this action." The district court therefore determined that Lindner's action was time barred and granted appellees' motion for summary judgment.

As noted, in *Lindner I*, we indicated that the alleged harm to Lindner's rights occurred when appellees declined to pay for the offstreet parking facilities through special assessments and instead paid for the costs through a general property tax or sales tax revenue drawn from municipal general funds. But in *Lindner I*, we could not tell from the face of Lindner's complaint when the decisions were made or when the decisions were implemented. Hence, the necessity of the remand.

Following the hearing and decision on remand, Lindner appeals. Upon our review of the record, we determine that the district court correctly identified the three undisputed dates when appellees chose the funding mechanism to be used and implemented that decision. Even if we were to use the latest of these events, October 16, 2006, as the date upon which

Lindner's claim accrued, Lindner's December 16, 2011, complaint was filed more than 4 years after the action accrued. Therefore, the district court did not err when it determined that Lindner's claim is time barred by the 4-year statute of limitations.

## CONCLUSION

We conclude that the 4-year catchall statute of limitations period set forth in § 25-212 applies to Lindner's claim. We determine that the district court did not err when it granted summary judgment in favor of appellees based upon its determination that Lindner's claim is barred by the statute of limitations.

AFFIRMED.