16 Neb. App. 246
IN RE INTEREST OF LAWRENCE H., ALSO KNOWN AS FAREN H., A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE,
v.
IDA H. AND JOSE O., APPELLANTS, AND OMAHA TRIBE OF NEBRASKA, INTERVENOR-APPELLEE.
No. A-07-592.
Court of Appeals of Nebraska.
Filed December 11, 2007.
Brian S. Munnelly, Brian J. Muench, and Judith A. Zitek for appellants.
Donald W. Kleine, Douglas County Attorney, Renee L. Mathias, and Joshua Yambor, Senior Certified Law Student, for appellee.
Owen L. Farnham, of Anderson & Bressman Law Firm, P.C., L.L.O., guardian ad litem.
INBODY, Chief Judge, and IRWIN and MOORE, Judges.
INBODY, Chief Judge.

INTRODUCTION
Ida H. and Jose O. appeal the order of the separate juvenile court of Douglas County that terminated their parental rights to their son Lawrence H., also known as Faren H. (Faren). Because we conclude that the juvenile court erred in deferring its ruling on the motion to transfer of the Omaha Tribe of Nebraska (Omaha Tribe), we reverse the juvenile court's denial of the motion to transfer, vacate and dismiss the order terminating parental rights, and remand with directions to transfer the matter to tribal court.

STATEMENT OF FACTS
On June 7, 2005, the State filed a petition alleging, inter alia, that Faren, born June 2, 2005, was a registered member of and/or eligible for enrollment in the Omaha Tribe and came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004), being a child who lacked proper parental care due to the faults or habits of his parents, Ida and Jose. The State alleged that statutory grounds for termination of both parents' parental rights existed under Neb. Rev. Stat. § 43-292(2) and (4) (Reissue 2004) and that termination would be in Faren's best interests. The State prayed for termination of Ida's and Jose's parental rights.
On June 14, 2005, the State filed a notice informing the Indian Child Welfare Act (ICWA) specialist for the Omaha Tribe of the petition and of the fact that Faren may be eligible for membership in the Omaha Tribe, thus invoking rights under the ICWA. See 25 U.S.C. § 1901 et seq. (2000) and Neb. Rev. Stat. § 43-1501 et seq. (Reissue 2004).
On August 8, 2005, on behalf of the Omaha Tribe, the tribal prosecutor filed a motion for intervention and a motion to transfer the case to Omaha Tribal Court. A hearing was held on the motions on August 9, and in an order entered on the same day, the juvenile court continued the hearing on the motions for intervention and transfer to September 16 and stated that "this matter shall be set for an Adjudication hearing and scheduled for one day in approximately two months."
On September 16, 2005, Faren's guardian ad litem filed an objection to transfer to tribal court, alleging that good cause existed to deny the Omaha Tribe's motion to transfer and that a transfer would be contrary to Faren's best interests.
At the September 16, 2005, hearing, the juvenile court received evidence that Ida was a member of the Omaha Tribe and that Faren was eligible for enrollment in the Omaha Tribe. Ida and Jose did not object to the transfer. Counsel for the State admitted that while the State did not believe transfer would be in Faren's best interests, it did not have any evidence showing good cause not to transfer. Faren's guardian ad litem agreed that transferring the matter to tribal court would be contrary to Faren's best interests because the juvenile court had already adjudicated siblings of Faren's and because the juvenile court could offer "better services." The guardian ad litem later clarified that he did not mean to state that the tribal court was incompetent.
The tribal prosecutor responded that the tribal court had access to the same services as the juvenile court and that Faren's siblings' cases were a matter of record. The tribal prosecutor confirmed that most of the witnesses would be in Omaha and acknowledged that the tribal court was "out in the middle of nowhere," about 75 miles from the juvenile court's location, but stated that the tribal court had means of securing appearances and that the distance would not be "that much of a burden." The tribal prosecutor stated that adequate services were available in the tribal court, including medical services that Faren received through the Department of Health and Human Services (DHHS), and continued:
Your Honor, if I may, if there's further information that you would like in an evidentiary hearing later, I don't believe the child's welfare is prejudiced either way by, you know, the Court taking its time to consider its ruling. I don't think the child's welfare is prejudiced either way, so I don't know that it's incumbent that we have a ruling right now.
Faren's guardian ad litem argued that Faren's placement was in Bellevue, Nebraska, and that requiring his medical providers and other service providers to travel to tribal court was an undue hardship that would not occur if the case were to remain in the juvenile court. The tribal prosecutor admitted that Bellevue was 86 miles from the tribal court. The juvenile court stated that it would take the matter under advisement.
Following the September 16, 2005, hearing, the juvenile court entered an order granting the motion for intervention. The juvenile court further found that "the Omaha Tribe's Notice of Intent to Transfer was objected to by the child's Guardian ad Litem and was taken under advisement by the Court." The juvenile court set the adjudication hearing for October 6.
The juvenile court proceeded with the adjudication hearing on October 6, 2005. Near the outset of the hearing, the following colloquy took place:
[Ida's counsel]: I don't think the Court can go forward with adjudication until we have the ruling on [the motion to transfer].
THE COURT: You have authority for that?
[Ida's counsel]: No, I don't.
THE COURT: I intend to take up the matter under advisement following the adjudication of the case.
[Ida's counsel]: But if it's transferred, Your Honor, you wouldn't hear the adjudication. That's what the Tribe is asking is that they be allowed to adjudicate this case, not the District of Douglas County.
THE COURT: The Tribe is party to these proceedings, and they can argue it on their own, I think. The transfer can be taken up at any stage of the proceedings, and I've taken it under advisement, and we have parties prepared to go forward here. We have witnesses here. We have the matter which allegedly  a situation which allegedly took place or occurred here in this jurisdiction, and I intend to take the matter up following the adjudication of the matter.
Ida's counsel and guardian ad litem also expressed concerns that Ida could be denied her right to appeal the transfer issue. The tribal prosecutor stated, "The Tribe's position is certainly intervening. The Tribe would request that the transfer motion be heard first just  it's an issue of sovereignty on whether or not the Court adjudicates." The juvenile court concluded that none of the parties had produced legal authority and proceeded with the adjudication. The adjudication hearing was continued to November 17 and 18.
On November 15, 2005, Ida and Jose filed a notice of appeal to this court, appealing the juvenile court's "denial of the Motion to Transfer to Tribal Court filed August 8, 2005 entered by this Court's failure to timely rule on said Motion."
At the November 17, 2005, adjudication hearing, Jose's counsel argued that because of the pending appeal, the juvenile court did not have jurisdiction to order an evaluation and services on behalf of Faren and that "[t]his belongs in the tribal court." The tribal prosecutor declined to object to services being provided to Faren. The juvenile court determined that it had jurisdiction to act on behalf of Faren's wellbeing and scheduled the matter for a "continued adjudication check."
The juvenile court conducted adjudication check hearings on February 23 and May 30, 2006. Following each of the hearings, the juvenile court entered an order finding that "this matter continues to pend on appeal in the Nebraska Court of Appeals." The juvenile court ordered the matter to be set for a continued adjudication hearing.
On June 13, 2006, this court dismissed the appeal for lack of jurisdiction because the juvenile court had not denied the motion to transfer and there was no final order from which to appeal. See In re Interest of Lawrence H., No. A-05-1409, 2006 WL 1596519 (Neb. App. June 13, 2006) (not designated for permanent publication).
On August 21, 2006, the juvenile court conducted a continued adjudication hearing. Before the juvenile court heard testimony, Jose's counsel requested a ruling on the transfer issue or an "indication as to when a ruling will take place." The juvenile court declined to rule, stating:
I declined to rule during the course of trial previously, and that was essentially because we're in the middle of trial, and I'm not going to move a case to another jurisdiction  to the Indian Nation essentially in the middle of trial and certainly not when we have a situation where witnesses are being called who are local and who need to be, I think, reasonably able to attend the proceedings, and I don't want to impose hardship on any of the parties.
. . . .
. . . I'm just saying that [the tribal prosecutor] was not asking for a ruling on [the motion for transfer] until the parties raised it at the adjudication hearing.
So, anyhow, I'm not going to rule on it now. I'm going to  I'd indicate to the parties that I would intend, as I have intended all along, to rule on the matter either at the conclusion of the adjudication hearing or if the matter proceeds to disposition, no later than the disposition portion of the hearing.
The juvenile court proceeded with the adjudication hearing and heard testimony and received exhibits.
The juvenile court continued conducting adjudication hearings from November 30, 2006, until the last adjudication hearing on January 16, 2007.
On April 30, 2007, the juvenile court entered an order terminating Ida's and Jose's parental rights to Faren. The juvenile court specifically found that there was clear and convincing evidence that Faren was a child within the meaning of § 43-247(3)(a), that Faren came within the meaning of § 43-292(2) and (4) beyond a reasonable doubt, and that active but unsuccessful efforts to rehabilitate Ida and Jose had been undertaken. The juvenile court ordered that Faren remain in the custody of DHHS for adoptive planning and placement and authorized DHHS to consent to legal adoption. The juvenile court ordered DHHS to inform the juvenile court if adoption were finalized, at which time jurisdiction of the juvenile court would terminate. Finally, the juvenile court stated, "IT IS FURTHER ORDERED that the Indian Child Welfare Act issue involving transfer of this action to the Omaha Tribe of Nebraska shall be set for continued hearing and scheduled for one-half hour on May 3, 2007 at 3:15 p.m."
As scheduled, on May 3, 2007, the juvenile court conducted an additional hearing on the transfer issue. Counsel for the State, Omaha Tribe Indian Child Welfare, Ida, and Jose were all present, as well as guardians ad litem for Faren, Ida, and Jose. Upon an earlier motion by the tribal prosecutor, the juvenile court continued the hearing to May 29. The juvenile court noted that there would probably be an appeal of the termination order and stated, "My intention is to provide the parties with all possible appealable issues to have them ripe for a hearing at one time, and that's why I did call the short notice hearing."
The bill of exceptions for the May 29, 2007, hearing was not made a part of the record on appeal by the parties.
On May 29, 2007, following the May 29 hearing, the juvenile court rendered an order denying the Omaha Tribe's motion for transfer on the basis of the doctrine of forum non conveniens. On May 29 in the juvenile court, Ida and Jose filed their notice of appeal of the April 30, 2007, order that terminated their parental rights.

ASSIGNMENTS OF ERROR
Ida and Jose contend that the juvenile court erred in denying transfer to the tribal court. Ida and Jose also allege several errors pertaining to the termination proceedings and findings.

STANDARD OF REVIEW
[1,2] Cases arising under the Nebraska Juvenile Code are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings. In reviewing questions of law arising in such proceedings, an appellate court reaches a conclusion independent of the lower court's ruling. In re Interest of Destiny S., 263 Neb. 255, 639 N.W.2d 400 (2002). A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law. In re Interest of Anthony R. et al., 264 Neb. 699, 651 N.W.2d 231 (2002).
[3,4] A denial of a transfer to tribal court is reviewed for an abuse of discretion. See In re Interest of Brittany C. et al., 13 Neb. App. 411, 693 N.W.2d 592 (2005). A judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system. In re Interest of L.V., 240 Neb. 404, 482 N.W.2d 250 (1992).

ANALYSIS

Appellate Jurisdiction.
[5,6] We first address the State's contention that this court lacks jurisdiction because the juvenile court did not rule on the motion to transfer before this appeal was filed. In a juvenile case, as in any other appeal, before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. In re Interest of Dakota L. et al., 14 Neb. App. 559, 712 N.W.2d 583 (2006). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. In re Interest of Anthony R. et al., 264 Neb. 699, 651 N.W.2d 231 (2002). Having reviewed the record, including the supplemental transcript consisting of the juvenile court's order denying the motion for transfer, we conclude that Ida and Jose timely appealed a final, appealable order and that we have jurisdiction to address this appeal.

Denial of Transfer to Tribal Court.
Ida and Jose assert that the juvenile court erred in denying the motion to transfer the proceedings to tribal court. As recounted above, the motion to transfer was filed early in the proceedings, but the juvenile court deferred ruling on the motion until after ordering termination of Ida's and Jose's parental rights.
[7-9] Neb. Rev. Stat. § 43-1504(2) (Reissue 2004) provides:
In any state court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe, except that such transfer shall be subject to declination by the tribal court of such tribe.
In proceedings to terminate parental rights to an Indian child, the child's tribe shall have the right to intervene at any point in the proceeding. See § 43-1404(3). Presumably, the tribe may also file a motion to transfer at any point in the proceedings. However, under the ICWA, if the tribe or either parent of the Indian child petitions for transfer of the proceeding to the tribal court, the state court cannot proceed with the placement of an Indian child living outside a reservation without first determining whether jurisdiction of the matter should be transferred to the tribe. In re Interest of C.W. et al., 239 Neb. 817, 479 N.W.2d 105 (1992) (citing 25 U.S.C. § 1911(b) (2000), which mirrors § 43-1504(2)).
[10] In In re Interest of Brittany C. et al., 13 Neb. App. 411, 423, 693 N.W.2d 592, 602-03 (2005), we observed the following: "That a state court may take jurisdiction does not necessarily mean that it should do so, as the court should consider the rights of the child, the rights of the tribe, and the conflict of law principles, and should balance the interests of the state and the tribe." Citing In re Interest of C.W. et al., supra. On this basis, we determined that the denial of a transfer to tribal court is reviewed for an abuse of discretion.
In In re Interest of Brittany C. et al., supra, we determined that an order denying requests to transfer jurisdiction to a tribal court affected a substantial right in a special proceeding. In so doing, we stated:
[T]he request to transfer jurisdiction in the instant case is not merely a step or a proceeding within the overall action. If the request were granted, the pending proceedings would stop and these matters would be transferred to another forum. While a tribal court in some respects may resemble a judicial forum based on Anglo-Saxon judicial traditions, it may differ in other respects consistent with the tribal court's Native American traditions. . . .
Further, in adopting the [Nebraska] ICWA, the Legislature determined that Nebraska public policy should "'cooperate fully with Indian tribes in Nebraska in order to ensure that the intent and provisions of the federal [ICWA] are enforced." Neb. Rev. Stat. § 43-1502 (Reissue 2004). In the federal act, Congress recognized the special relationship between the United States and the Indian tribes and the federal responsibility to Indian people; Congress found, inter alia, that (1) there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children; (2) the United States has a direct interest, as trustee, in protecting Indian children who are members of or are eligible for membership in an Indian tribe; (3) an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies; (4) an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; and (5) the states, exercising their recognized jurisdiction over Indian child custody proceedings through administrative and judicial bodies, have often failed to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families. 25 U.S.C. § 1901 (2000). These findings emphasize Congress' determination that a tribal court may provide the parent and the child with significant advantages inherent in the recognition and implementation of Native American customs and traditions.
In re Interest of Brittany C. et al., 13 Neb. App. at 421, 693 N.W.2d at 601-02.
[11-14] In the instant case, the juvenile court based its denial of the motion for transfer on the doctrine of forum non conveniens, a valid basis for good cause to deny transfer. See, e.g., In re Interest of Brittany C. et al., supra; In re Interest of C.W. et al., supra. However, under the ICWA, factual support must exist in the trial record for the purposes of appropriate appellate review as to good cause for failure to comply with statutory child placement preference directives. See In re Interest of Bird Head, 213 Neb. 741, 331 N.W.2d 785 (1983). There is no evidence in the record before us that the juvenile court heard sworn testimony regarding good cause, and we cannot rely on the assertions of counsel to evaluate the juvenile court's finding. See City of Lincoln v. MJM, Inc., 9 Neb. App. 715, 618 N.W.2d 710 (2000) (attorney's assertions at trial are not to be treated as evidence). The bill of exceptions from the May 29, 2007, hearing on the motion to transfer is not before us, and although the resultant order indicates that the juvenile court heard arguments from the parties, there was no indication that the juvenile court heard any evidence to support its findings. We recognize that it is incumbent upon the party appealing to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower court is to be affirmed. In re Interest of R.R., 239 Neb. 250, 475 N.W.2d 518 (1991). However, when a transcript, containing the pleadings and order in question, is sufficient to present the issue for appellate disposition, a bill of exceptions is unnecessary to preserve an alleged error of law regarding the proceedings under review. Foster v. Foster, 266 Neb. 32, 662 N.W.2d 191 (2003). In this case, we are most concerned with the juvenile court's delay in denying the motion to transfer, and the record before us, even without the bill of exceptions of the final hearing, is sufficient to present that issue.
Section 43-1504(2) requires transfer to tribal court absent a showing of good cause. Regardless of what evidence may have been presented at the May 29, 2007, hearing, the juvenile court commenced with trial without any evidence of good cause. The juvenile court deliberately delayed ruling on the motion to transfer for almost 22 months, until after it had conducted complete termination proceedings and after it had entered an order terminating Ida's and Jose's parental rights. In so doing, the juvenile court contravened the Nebraska Supreme Court's interpretation of the ICWA and the ICWA's underlying intent and conducted termination proceedings that, without a showing of good cause, rightly belonged in the tribal court.
We conclude that the juvenile court's refusal to rule on the motion to transfer before proceeding with termination proceedings was erroneous and an abuse of discretion. Therefore, we reverse the juvenile court's denial of the motion to transfer, vacate and dismiss the order terminating parental rights, and remand, with directions to transfer the matter to tribal court.
VACATED AND DISMISSED IN PART, AND IN PART REVERSED AND REMANDED WITH DIRECTIONS.