IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


KOCH V. LOWER LOUP NRD


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


MARK ALLEN KOCH, APPELLANT,

V.

LOWER LOUP NATURAL RESOURCES DISTRICT, APPELLANT.


Filed December 13, 2016.    No. A-15-559.


Appeal from the District Court for Valley County: KARIN L. NOAKES, Judge. Reversed and remanded for further proceedings.

Mark Allen Koch, pro se.

Thomas S. Kruml, of Kruml Law Office, P.C., L.L.O., for appellee.


MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Mark Allen Koch, pro se, filed a complaint requesting a writ of mandamus to void various meetings of the Lower Loup Natural Resources District Programs and Projects Committee (Committee), and all actions taken therein and therefrom, alleging that the Committee violated the Open Meetings Act, Neb. Rev. Stat. §§ 84-1407 to 84-1414 (Reissue 2014). The district court for Valley County granted summary judgment in favor of the Lower Loup Natural Resources District (Lower Loup NRD). For the reasons that follow, we reverse and remand for further proceedings.

## II. FACTUAL BACKGROUND

This case concerns four meetings that took place in June and July 2014: two meetings of the Committee (June 17 and July 15) and two meetings of the Lower Loup NRD Board of Directors (Board) (June 26 and July 24). Koch attended the meetings as a citizen, but also as a spokesman

for the "Bredthauer Dam Proposal," a project which was discussed at the meetings. We briefly summarize what happened at these four meetings.

### 1. JUNE 17, 2014--COMMITTEE MEETING

The Committee held a meeting on June 17, 2014; the partial meeting minutes that appear in our record do not list those in attendance at the meeting. It is undisputed that Koch, Eugene Bredthauer (Bredthauer), and Bredthauer's son, were prevented from entering the meeting for approximately 15 minutes. Five items appeared on the meeting agenda, one of which was the "Bredthauer Dam Proposal." The section of the minutes discussing the Dam Proposal reveals the following. The Committee was informed that Koch was told that in order for him to speak to the Committee he was to send an updated proposal for the project prior to the meeting so that staff could review the new information before it was presented to the Committee. The proposal was not submitted prior to the meeting. Discussion was had as to how to proceed. It was "again" explained to Koch that normal procedure is to give the proposal to staff in advance, then staff would review the information and make recommendations to the Committee; then the Committee would review and discuss the proposal and make recommendations to the Board. The Committee ultimately voted to table the proposal until July, "pending the Bredthauer proposal be[ing] submitted to staff in advance of the meeting, allowing sufficient time to review the proposal."

### 2. JUNE 26, 2014--BOARD MEETING

The Board held a meeting on June 26, 2014. The minutes reflect that 17 out of the 21 directors were present at the meeting. Koch and Bredthauer were among those listed as "guests in attendance." The section of the minutes titled "Public Comments" provides as follows. Bredthauer told the Board that he had authorized Koch to speak on his behalf regarding the Bredthauer Dam Project. Koch handed out a proposal for the Bredthauer Dam Project to each Board member and said he understood that the Committee had tabled the project until July. The Chairman of the Board informed Koch that anything the Board would consider for the project needed to be submitted to management first for their review. Koch responded that he would not be commenting on anything in the proposal. The public comment that Koch wanted to make was that he was not allowed to enter the June 17 Committee meeting for 15 minutes; he had wanted to record the meeting and was disappointed when that did not happen. He said he planned to attend the July Committee meeting and would like to present the project in an in-depth manner; he hoped it would be a feasible project.

One of the directors said he requested the Bredthauer Dam Project to be put on the June 2014 Committee agenda to determine whether the request should be revisited, but that Koch was not necessarily "on" the agenda. The director said that the procedure was to submit information to staff for their review, and if staff felt it was warranted, they would bring it to the Committee; staff would determine if the project would be on the July Committee agenda. Leon Koehlmoos (Koehlmoos), the General Manager of the Lower Loup NRD, said that at the June Committee meeting, he had said he would review proposals to see if there were any changes from the original discussions with Bredthauer, and if there was nothing new and Koch was asking for the same things as in the past, Koehlmoos would probably not be taking the information forward. Koch

responded that the proposal he passed out to the Board was an entirely new proposal; Koehlmoos said he would review it.

The section of the minutes titled "Programs/Projects Committee Report" contains a section regarding the "Bredthauer Dam Proposal," which states as follows. A director said the Committee discussed whether or not to bring the Bredthauer Dam Proposal forward; they decided not to because Bredthauer/Koch did not follow the protocol of giving information to staff first for their review and letting staff decide whether or not to bring the information to the Committee. The director told the Board that the Committee voted to table the Bredthauer Dam Proposal until July, pending the proposal being submitted to staff in advance of the meeting and allowing sufficient time for review. Koehlmoos also told the Board that it was a "misunderstanding" when Koch was not immediately allowed to enter the Committee meeting; having someone wait to be introduced and brought into a meeting is the process for Variance Committee meetings, so the mistake was not intentional. The chairman stated that the meeting was advertised as a public meeting, so Koch could have come in right from the beginning; Koehlmoos agreed and stated he would correct the misunderstanding on public meetings in the future.

### 3. JULY 15, 2014--COMMITTEE MEETING

The Committee held a meeting on July 15, 2014. The Committee minutes appearing in our record (which do not appear to be a complete copy) stated that seven Committee members were present (all seven Committee members are on the Board). In addition to six "staff present," the minutes also list Koch and Bredthauer as "others present." The section of the minutes discussing the Dam Proposal stated that Koch was informed he could not make a video recording because it was not a public meeting. "Koch reviewed the proposal that he had presented to the Board at its June meeting. Following the presentation, the Board discussed the project, discussing issues with the 404 permit, public access to the property, and the design of the project." The Committee then voted to recommend to the Board that the Bredthauer Dam request be denied.

### 4. JULY 24, 2014--BOARD MEETING

The Board held a meeting on July 24, 2014. The minutes reflect that 14 out of the 21 directors were present at the meeting. Koch and Bredthauer were among those listed as "guests in attendance." The section of the minutes titled "Public Comments" states that "[t]here were no public comments."

The section of the minutes titled "Programs/Projects Committee Report" contains a section regarding the "Bredthauer Dam Proposal," which states as follows. Koehlmoos said that Koch spent about an hour reviewing the proposal with the Committee on July 15, 2014. A Committee/Board member stated that Koch's presentation was "very interesting and well presented," but there were issues and unanswered questions about the project regarding permits, public access, and design; there was a lot of uncertainty about the project and the Committee did not feel comfortable moving forward, so it was recommending denial of the request at this time.

The minutes note that Koch "outlined his concerns regarding the Open Meetings Act" and gave a 15-minute presentation reiterating items in the proposal. Another guest in attendance at the Board meeting then spoke in favor of the Dam Proposal. Discussion was had "about the project

being a private structure, engineering assistance, DNR permit, and funding." Eleven of the directors present at the meeting then voted to deny the Bredthauer Dam request.

### III. PROCEDURAL BACKGROUND

On October 14, 2014, Koch filed a "complaint request for writ of mandamus for open meetings act and freedom of information act violations by the Lower Loup Natural Resource District and discrimination against Koch Repair when representing the Eugene Bredthauer Dam Project." Koch alleged various violations of the Open Meetings Act. He asked that actions taken in violation of the Open Meetings Act be voided, and that those responsible for violating the Open Meetings Act be held accountable. He also requested that the Lower Loup NRD be made to allow him access to public records.

On November 14, 2014, the Lower Loup NRD filed its answer to Koch's complaint, generally denying all allegations. The Lower Loup NRD also alleged affirmative defenses. On December 29, the Lower Loup NRD filed a motion for summary judgment, alleging that there were no issues of material fact and that it was entitled to judgment as a matter of law. On February 12, 2015, Koch filed a motion to deny the Lower Loup NRD's summary judgment; he attached a DVD to his motion, a video recording he claimed showed violations of the Open Meetings Act.

On March 10, 2015, Koch filed a motion to amend complaint, stating that the amended complaint was to be filed on March 16.

On March 16, 2015, Koch, without leave of the court, filed an "amended complaint for writ of mandamus for open meetings act violations by the Lower Loup Natural Resource District and discrimination against Koch Repair when representing the Eugene Bredthauer Dam Project." In his amended complaint, Koch alleged the following "cause[s] of action": (1) he was refused access to and the ability to record the first 14-16 minutes of the "published public meeting" of the Committee on June 17, 2014; (2) the Lower Loup NRD (a) changed the classification of the Committee to a "sub-committee" to circumvent the Open Meetings Act and then (b) changed the date of the published July 2014 meeting of the Committee without published notification; (3) he was not allowed to video record the July 2014 meeting of the Committee; and (4) (a) he was not allowed to present the Bredthauer Dam Proposal at the "public meeting" even though the proposal was "on the agenda" (it is unclear which meeting Koch is referring to), (b) he was told he would not get to speak if the office staff decided not to put the proposal on the agenda for the July meeting of the Committee, and (c) the office staff refused to allow him an agenda item. Koch asked the district court to (1) "void the entire meeting of the Programs and Projects Committee for July, 2014"; (2) "order all information given to the [Lower Loup NRD] board of directors [at the] meeting [in] July, [sic] 2014 and action taken on that information (including the vote against the Bredthauer Mira Creek Dam Project) from the illegal meeting be voided"; and (3) hold all members of the Committee accountable for violating the Open Meetings Act.

In its journal entry and order filed on March 17, 2015, the district court memorialized the following. A hearing was held that day on the Lower Loup NRD's motion for summary judgment and on Koch's motion to amend his complaint. At the hearing, the Lower Loup NRD agreed to proceed on Koch's motion to amend his complaint, even though it was not given proper notice. Prior to ruling on the motion, the district court inquired of Koch as to his specific and complete

requests for relief in each cause of action alleged in the amended complaint. Koch stated that as to the first cause of action, he was requesting an order declaring the June 17, 2014, meeting void. As to the second cause of action, he was requesting an order requiring Committee meetings to be open to the public. As to the third cause of action, he was requesting an order directing the Committee to allow video recordings of meetings. As to the fourth cause of action, he was requesting an order directing the Committee to allow citizens to speak at the Committee hearings, including items on the agenda. Koch was also requesting $12,500 in damages and costs. The district court sustained Koch's motion to amend his complaint, and found that the amended complaint filed March 16, 2015, was the operative complaint. The Lower Loup NRD was given 7 days to file an amended answer. The district court also granted the Lower Loup NRD's oral motion to continue the motion for summary judgment, and rescheduled the matter for April 21. The parties were advised that the Rules of the District Court for the Eighth Judicial District and the Nebraska Revised Statutes' procedural rules regarding Motions for Summary Judgment would be followed at the hearing.

On March 18, 2015, the Lower Loup NRD filed its answer to Koch's amended complaint, and denied all allegations. Also on March 18, the Lower Loup NRD filed an amended motion for summary judgment, alleging that there were no issues of material fact and that it was entitled to judgment as a matter of law.

On April 21, 2015, a hearing was held on the Lower Loup NRD's amended motion for summary judgment. The Lower Loup NRD offered the following exhibits, all of which were received into evidence: the affidavit of Koehlmoos; the Committee meeting agenda for June 17, 2014, and partial meeting minutes; the Board meeting minutes from June 26; the Committee meeting minutes from July 15 (appears to be only a portion of the minutes); and the Board meeting minutes from July 24.

Koch offered exhibit 6, a DVD (recordings he made that "proves the entire case"). The district court did not receive the DVD into evidence because "the rules regarding the receipt of evidence on Motions for Summary Judgment are clear that the evidence received is limited to depositions, answers to interrogatories, admissions, stipulations, and affidavits." Koch also offered the following exhibits, all of which were received into evidence: the Committee meeting minutes from July 15, 2014 (appears to be only a portion of the minutes, and identical to the portion of the minutes offered by the Lower Loup NRD); the Committee meeting agenda for June 17 (identical to the one offered by the Lower Loup NRD, but without the partial meeting minutes attached); and the affidavit of Bredthauer.

In its order filed on June 16, 2015, the district court addressed each of Koch's causes of action (as clarified at the March 17 hearing) in turn. The First Cause of Action requested the court declare void the June 17, 2014, Committee meeting. The court found that the Committee was a subcommittee of the Board and noted that subcommittee meetings that do not contain a quorum of the governing public body are not subject to the Open Meetings Act. Although the court found there was a question of fact regarding whether or not a quorum was present, it found that question of fact was not material because: the record showed Koch was present at the meeting and he was told that the item he wanted to discuss (the Bredthauer Dam Proposal) would be placed on the agenda for the July meeting, and there was no discussion or decision made on the Bredthauer Dam

Proposal at that June meeting. Accordingly, the court determined that Koch had not shown that a voidable action was taken at the June 17 meeting.

The Second Cause of Action requested an order requiring Committee meetings to be open to the public. The district court stated that it appeared Koch was requesting the court to order all meetings of the Committee to be open to the public, whether attended by a quorum or not. The court found the requested order would be contrary to the Open Meetings Act which defines what meetings are subject to the open meetings statutes, and said that Committee meetings not attended by a quorum of the public body are not required to be open to the public.

The Third Cause of Action requested an order directing the Committee to allow video recordings of their meetings. The court noted that the Open Meetings Act allows meetings of a "public body" to be videotaped. However, the meeting on July 15, 2014, which Koch claimed he was not allowed to video, was not attended by a quorum of Board members and therefore, the Committee was not functioning as a "public body." The court stated it could not issue an order requiring a committee to allow recording when the statute only applies to groups that are functioning as a "public body."

The Fourth Cause of Action requested an order directing the Committee to allow citizens to speak at the committee hearings, including items on the agenda. The court noted that the Open Meetings Act establishes the rights of the public to attend and speak at meetings of "public bodies." But the evidence presented showed that the Committee was not operating as a "public body" on July 15, 2014, "which appears to be one of the meetings [Koch] challenges." To the extent his Fourth Cause of Action alleges that violations of the Open Meetings Act occurred at the June 26 or July 24, 2014, Board meetings, the evidence showed that Koch attended and spoke at each of those meetings.

The district court granted summary judgment in favor of the Lower Loup NRD on all causes of action and dismissed Koch's complaint. Koch appeals.

## IV. ASSIGNMENTS OF ERROR

Consolidated and restated, Koch assigns that the district court erred in: (1) failing to take judicial notice of (a) the fact that the Committee is called a committee and not a subcommittee, and (b) the Lower Loup NRD representative's statement that "they cannot have the entire board take up every single issue"; (2) determining that the Committee is a subcommittee; (3) granting summary judgment in favor of the Lower Loup NRD; (4) excluding a DVD from evidence; and (5) allowing the Committee to reschedule meetings.

In his reply brief, Koch made additional assignments of error. However, the purpose of an appellant's reply brief is to respond to the arguments the appellee has advanced against the errors assigned in the appellant's initial brief. *Linscott v. Shasteen*, 288 Neb. 276, 847 N.W.2d 283 (2014). Errors not assigned in an appellant's initial brief are thus waived and may not be asserted for the first time in a reply brief. *Id.*

## V. STANDARD OF REVIEW

An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the

ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted and gives that party the benefit of all reasonable inferences deducible from the evidence. *Pittman v. Rivera*, 293 Neb. 569, 879 N.W.2d 12 (2016).

Statutory interpretation is a question of law that an appellate court resolves independently of the trial court. *Cisneros v. Graham*, 294 Neb. 83, 881 N.W.2d 878 (2016).

## VI. ANALYSIS

### 1. JUDICIAL NOTICE

Koch asserts that the district court failed to take judicial notice of the following: (1) the Committee is called a committee and not a subcommittee; and (2) a Lower Loup NRD representative's statement that "they cannot have the entire board take up every single issue." However, Koch never asked the district court to take judicial notice of the above. And an appellate court will not consider an issue on appeal that was not presented to or passed upon by the trial court. *Purdie v. Nebraska Dept. of Corr. Servs.*, 292 Neb. 524, 872 N.W.2d 895 (2016).

### 2. WAS SUMMARY JUDGMENT PROPER?

Summary judgment is proper if the pleadings and admissible evidence offered at the hearing show there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Lindner v. Kindig*, 293 Neb. 661, 881 N.W.2d 579 (2016). A party moving for summary judgment makes a prima facie case for summary judgment by producing enough evidence to demonstrate that the movant is entitled to judgment if the evidence were uncontroverted at trial. *Id*. Once the moving party makes a prima facie case, the burden shifts to the party opposing the motion to produce admissible contradictory evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id*.

#### (a) Open Meetings Act Law in General

"Every meeting of a public body shall be open to the public . . . except as otherwise provided by the Constitution of Nebraska, federal statutes, and the Open Meetings Act." § 84-1408. Section 84-1409 defines "public body" as follows:

> (1)(a) Public body means (i) governing bodies of all political subdivisions of the State of Nebraska, (ii) governing bodies of all agencies, created by the Constitution of Nebraska, statute, or otherwise pursuant to law, of the executive department of the State of Nebraska, (iii) all independent boards, commissions, bureaus, committees, councils, subunits, or any other bodies created by the Constitution of Nebraska, statute, or otherwise pursuant to law, (iv) all study or advisory committees of the executive department of the State of Nebraska whether having continuing existence or appointed as special committees with limited existence, (v) advisory committees of the bodies referred to in subdivisions (i), (ii), and (iii) of this subdivision, and (vi) instrumentalities exercising essentially public functions; and

(b) *Public body does not include (i) subcommittees of such bodies unless a quorum of the public body attends a subcommittee meeting or unless such subcommittees are holding hearings, making policy, or taking formal action on behalf of their parent body*, except that all meetings of any subcommittee established under section 81-15,175 are subject to the Open Meetings Act, and (ii) entities conducting judicial proceedings unless a court or other judicial body is exercising rulemaking authority, deliberating, or deciding upon the issuance of administrative orders[.]

(Emphasis supplied.) "No public body shall designate itself a subcommittee of the whole body for the purpose of circumventing the Open Meetings Act." § 84-1410.

The public has the right to attend and speak at meetings of the public bodies. § 84-1412(1). Any person in attendance may videotape or record all or any part of a meeting of the public body. *Id*. However, the public body may make and enforce reasonable rules and regulations regarding the conduct of persons attending, speaking at, or videotaping/recording its meetings. § 84-1412(2). A body may not be required to allow citizens to speak at each meeting, but it may not forbid public participation at all meetings. *Id*.

Finally, section 84-1414 provides in relevant part:

(1) "Any motion, resolution, rule, regulation, ordinance, or formal action of a public body made or taken in violation of the Open Meetings Act shall be declared void by the district court if the suit is commenced within one hundred twenty days of the meeting of the public body at which the alleged violation occurred." . . .

Koch filed his original complaint within 120 days of all meetings at issue.

### (b) Is Committee a "subcommittee"?

In 1969, the Nebraska Legislature created the State's natural resources districts (NRDs). Neb. Rev. Stat. § 2-3201 (Reissue 2012). The Legislature has declared that NRDs are political subdivisions of the State. Neb. Rev. Stat. § 2-3213 (Reissue 2012). Each district is governed by a board of directors. *Id*. Accordingly, the Board is a "public body," and its meetings are subject to the Open Meetings Act. §§ 84-1408 and 84-1409(1)(a)(i). See, also, Neb. Rev. Stat. § 2-3219 (Reissue 2012) (notice of all board meetings shall be given pursuant to § 84-1411 of the Open Meetings Act).

The parties' focus in this case has been on whether or not the Committee is a "subcommittee" of the Board. If the Committee is a subcommittee, then its meetings are not subject to the Open Meetings Act unless a quorum of the public body attends a subcommittee meeting or unless it is holding hearings, making policy, or taking formal action on behalf of its parent body. §§ 84-1408 and 84-1409.

Although the Open Meetings Act does not define "subcommittee," a subcommittee is generally defined as a group within a committee to which the committee may refer business. *City of Elkhorn v. City of Omaha*, 272 Neb. 867, 725 N.W.2d 792 (2007) (citing Black's Law Dictionary). In *City of Elkhorn v. City of Omaha*, members of the Omaha City Council attended informational sessions prior to a public meeting regarding the annexation of Elkhorn, Nebraska;

there was no quorum of council members present at any one of the informational sessions. The Nebraska Supreme Court held that informational sessions attended by a subgroup of the city council, consisting of less than a quorum which, accordingly, had no power to make any determination or effect any action, were not meetings of a "public body" under the Open Meetings Act. The Court explained that the Open Meetings Act "does not require policymakers to remain ignorant of the issues they must decide until the moment the public is invited to comment on a proposed policy." *City of Elkhorn v. City of Omaha*, 272 Neb. at 881, 725 N.W.2d at 806. It said that "[t]he public would be ill served by restricting policymakers from reflecting and preparing to consider proposals, or from privately suggesting alternatives." *Id*. The court concluded that "[b]y excluding nonquorum subgroups from the definition of a public body, the Legislature has balanced the public's need to be heard on matters of public policy with a practical accommodation for a public body's need for information to conduct business." *Id*.

At the summary judgment hearing, counsel for the Lower Loup NRD stated repeatedly that the Committee is a subcommittee of the Board, and therefore the Committee was not subject to the Open Meetings Act. However, counsel's statements are not evidence that go to the Lower Loup NRD's prima facie case for summary judgment. See *In re Interest of Lawrence H.*, 16 Neb. App. 246, 743 N.W.2d 91 (2007) (attorney's assertions at trial are not to be treated as evidence). We must look to the pleadings and admissible evidence offered at the summary judgment hearing.

In its original answer filed on November 14, 2014, the Lower Loup NRD affirmatively asserted that "there was not a quorum at the July 15, 2014, subcommittee meeting" and "that no hearings were held, the subcommittee did not make policy, nor did it take any formal action on behalf of [the] Lower Loup [NRD] at the subcommittee meeting in July 2014"; Koehlmoos' affidavit states the same. Neither the Lower Loup NRD pleading nor Koehlmoos' affidavit addressed the June 17 Committee meeting. Affirmative statements that the Committee is a subcommittee are conclusions of law and have no effect. See *Boyle v. Welsh*, 256 Neb. 118, 589 N.W.2d 118 (1999) (statements in affidavits as to opinion, belief, or conclusions of law are of no effect, and mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment).

The Lower Loup NRD produced little evidence in its pleadings or at the summary judgment hearing regarding the role of the Committee. No evidence was produced to show how the Committee was created or what authority it has. Neither the pleadings nor Koehlmoos' affidavit discussed the creation, authority, or role of the Committee. The only evidence produced regarding the functions performed by the Committee is whatever can be surmised from the meeting "Agenda" from June 17, 2014, and the partial minutes from the June 17 and July 15 meetings.

We do not know whether the Committee is an informational avenue for Board members, or whether the Committee takes a more heavy handed approach in the decision-making process. The Supreme Court has noted its concern "with a public body's perfunctorily approving a decision in a public meeting that was apparently reached in a private meeting." *City of Elkhorn v. City of Omaha*, 272 Neb. at 882, 725 N.W.2d at 806. "'The prohibition against decisions or formal action in a closed session also proscribes . . . rubberstamping or reenacting by a pro forma vote any decision reached during a closed session.'" *City of Elkhorn v. City of Omaha*, 272 Neb. at 882, 725 N.W.2d at 806, quoting *Grein v. Board of Education*, 216 Neb. 158, 168, 343 N.W.2d 718,

724 (1984). However, the court noted that *Grein* involved a closed session of a full school board, and that the school board immediately voted on an agenda item after a closed session, without further discussion or deliberations.

Based on the little evidence presented at the summary judgment hearing regarding the creation, authority, and role of the Committee, we cannot determine with certainty that the Committee is a subcommittee; and the district court did not explain its decision for so finding. We also find it curious that the Board meeting minutes from June 26, 2014, state that the June 17 Committee meeting was a "public meeting." The minutes reflect that the chairman stated that the Committee meeting was advertised as a public meeting, so Koch could have come in right from the beginning (Koch had been prevented from entering for 15 minutes); Koehlmoos agreed and stated he would correct the misunderstanding on public meetings in the future. Based on the foregoing, we find there is a material question of fact as to whether the Committee is a subcommittee, and thus exempt from the Open Meetings Act. Furthermore, neither the parties nor the district court addressed whether the Committee is an "advisory committee" of the Lower Loup NRD, which under § 84-1409(1)(a)(v) would be a "public body" subject to the Open Meetings Act. Accordingly, we must reverse the order of summary judgment and remand the matter for further proceedings.

For the sake of completeness, we also clarify a misinterpretation of § 84-1409(1)(b) by the district court. After finding that the Committee was a subcommittee, the court found there was a question of fact regarding whether or not a quorum was present at the Committee meeting on June 17, 2014 (neither the agenda nor the minutes reveal who was in attendance at the meeting). The court nevertheless found that question of fact was not material because of the following: the record showed Koch was present at the meeting and told that the item he wanted to discuss (Bredthauer Dam Proposal) would be placed on the agenda for the July meeting; there was no discussion or decision made on the Bredthauer Dam Proposal at that meeting; thus Koch had not shown that a voidable action was taken at the June 17 meeting.

However, there are two considerations that must be separately made with regard to subcommittees being excluded as a public body. Section 84-1409(1)(b) states in relevant part that a "Public body does not include (i) subcommittees of such bodies unless a quorum of the public body attends a subcommittee meeting **or** unless such subcommittees are holding hearings, making policy, or taking formal action on behalf of their parent body[.]" (Emphasis supplied.) Thus, it appears that if a quorum is present then the Committee is automatically a "public body" and subject to the Open Meetings Act. Based on the limited record, and as specifically noted by the district court, we do not know whether a quorum was present at the meeting on June 17, 2014; therefore, a material question of fact exits. (Counsel for the Lower Loup NRD stated at the summary judgment hearing that only 7 of the 21 Board members were present at the June 17 meeting, so there was no quorum of that committee present. But an attorney's assertions are not treated as evidence. See, *In re Interest of Lawrence H., supra.*) If a quorum of the Board was present and Koch was denied access to and the ability to record the June 17 Committee meeting, even if only a portion of the meeting, a violation of the Open Meetings Act occurred. Additionally, even if evidence had been adduced that no quorum of the Board was present, the other consideration for a subcommittee's exclusion as a public body requires an examination of whether the subcommittee

was holding hearings, making policy, or taking formal action on behalf of its parent body. The district court focused solely upon matters pertinent to the Dam Proposal. And while there may not have been anything to void regarding the Dam Proposal (because it was tabled), there were four other agenda items taken up on June 17 that the district court did not consider. Because the record only includes part of the minutes from the June 17 meeting, there is no way of knowing what, if any, action was taken on those other agenda items that may have been in violation of the Open Meetings Act that could be declared void. (The minutes from June 17 reflect that there was a vote to make a funding recommendation to the full board regarding one agenda item that appears in the minutes; two other agenda items are not included in the minutes before us so we do not know what, if any, action was taken).

We are mindful that Koch did not attend the meetings at issue solely to represent the Bredthauer Dam Project. He was also there as a citizen, and as such had the right to attend and record the entirety of all public meetings. And as a citizen, he has the right to bring suit to void "any motion, resolution, rule, regulation, ordinance, or formal action of a public body made in violation of the Open Meetings Act," § 84-1414; he was not limited to challenging actions related to the Bredthauer Dam Project.

## 3. DVD

Koch assigns, but does not specifically argue in his brief, that the district court erred in removing a DVD as an attachment to a pleading, and in not allowing the DVD as evidence at the summary judgment hearing. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *Cain v. Custer Cty. Bd. of Equal.*, 291 Neb. 730, 868 N.W.2d 334 (2015). However, for the sake of completeness, we address Koch's claims regarding the DVD, as the issue could come up again on remand.

Koch claims that the DVD (a video recording he claimed showed violations of the Open Meetings Act) was improperly removed as an attachment to his motion to deny summary judgment filed on February 12, 2015. A photocopy of the DVD is attached to Koch's motion, and the page contains the following handwritten notation: "2/13/15 - Per Judge Noakes DVDs cannot be accepted Per Court Rule 6-1503. Removed DVDs for Pet." Neb. Ct. R. § 6-1503 governs pleadings in district court and provides as follows:

> (A) Form: All pleadings shall be on 8½ x 11-inch paper; type shall be 12 point (10 pitch pica) and black in color. Exhibits attached to pleadings shall be similarly prepared in permanent form, shall be readable, and shall not be subject to unusual fading or deterioration.
>
> . . . .
>
> (G) Improperly Filed Pleadings: Any pleading which does not conform to these rules will be subject to a motion to strike from the file or such other action as the court deems proper.
>
> . . . .

- 11 -

Whether or not the district court allowed the DVD to be attached to Koch's pleading, or removed it, is of no import because such attachment is not evidence. See *Graves v. Scoville*, 17 Neb. 593, 24 N.W. 222 (1885) (exhibit attached to pleading not properly part of evidentiary record; motion to strike sustained). The real issue is whether or not the district court should have received the DVD into evidence at the summary judgment hearing.

Koch claims that the district court erred in not receiving the DVD (recordings he made that he claims "proves the entire case"), into evidence at the summary judgment hearing. In his reply brief, Koch relies on the Federal Rules of Civil Procedure, Rule 56, which allows "electronically stored information" in summary judgment proceedings. However, Federal Rule 56 is not applicable to this case because Nebraska state law controls. See *Crafton v. Union Pacific RR. Co.*, 7 Neb. App. 793, 585 N.W.2d 115 (1998) (procedural matters are dictated by the law of the forum; whether a party is entitled to summary judgment is a matter of procedure controlled by the law of the forum). Furthermore, the parties were advised in the district court's March 17, 2015, order that the Rules of the District Court for the Eighth Judicial District and the Nebraska Revised Statutes' procedural rules regarding Motions for Summary Judgment would be followed at the hearing.

Neb. Rev. Stat. § 25-1332 (Reissue 2008), specifically provides that "[t]he evidence that may be received on a motion for summary judgment includes depositions, answers to interrogatories, admissions, stipulations, and affidavits." Accordingly, we find no error with the district court concluding that the DVD, by itself, was not admissible under § 25-1332. Koch argues that he "did not know that only affidavits and sworn testimony were allowed in a motion for summary judgment." Reply brief for appellant at 19. But a pro se litigant will receive the same consideration as if he or she had been represented by an attorney, and, concurrently, that litigant is held to the same standards as one who is represented by counsel. *Friedman v. Friedman*, 290 Neb. 973, 863 N.W.2d 153 (2015).

## 4. REMAINING ASSIGNMENT OF ERROR

We have already determined that summary judgment was improper and that the matter should be reversed and remanded for further proceedings. Accordingly, Koch's remaining assignment of error--that the district court erred in allowing the Committee to reschedule meetings--need not be addressed. See *Gray v. Kenney*, 290 Neb. 888, 863 N.W.2d 127 (2015) (appellate court not obligated to engage in analysis not necessary to adjudicate case and controversy before it).

## VII. CONCLUSION

We find that a material issue of fact exists as to whether the Committee is a public body subject to the Open Meetings Act. Accordingly, we conclude that the trial court improperly granted the Lower Loup NRD's motion for summary judgment. We reverse the judgment of the district court and remand the cause for further proceedings.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.